[Civ. No. 1057. Fifth Dist. Jan. 21, 1970.]

LLOYD G. CONNELLY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

L. Miles Snyder and Reginald M. Watt for Plaintiff and Appellant.

Edward I. Pollack as Amicus Curiae on behalf of Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Willard A. Shank, Assistant Attorney General, and Thomas K. McGuire, Deputy Attorney General, for Defendants and Respondents.

Thompson & Colegate, Richard C. Field and Henry F. Walker as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**STONE, P. J.**—Appellant owned and operated three marinas, two on the Sacramento County side of the Sacramento River and one on the Yolo

County side, located near the confluence of the Sacramento and American Rivers. During the latter part of December 1964 heavy rains in Northern California caused the Sacramento River to rise to unusual heights. For several days prior to December 22, appellant periodically telephoned the State Department of Water Resources in Sacramento to inquire about any anticipated change in the level of the swollen river. Appellant alleges it is the function of this office to supply information about the height and anticipated rise, if any, in the water level of the river, and that people along the river rely upon the information given them by the department.

Appellant last called the department approximately 4 p.m. on December 22, 1964, at which time he was informed the river was expected to rise to a maximum of 24 feet. Relying on this information, appellant set his marina docks so they would float at a maximum river height of 26 feet; within four hours the river rose to 29 feet. It is alleged that by this time it was dark and appellant was unable to do anything to save his docks and apartment structures from extensive damage as the river remained at flood stage of 29 feet for two weeks.

Appellant filed a claim for damages with the State Board of Control, as provided in Government Code section 910 et seq. He alleged the officers, servants and employees of the Department of Water Resources negligently provided him with inaccurate information as to the anticipated rise in the Sacramento River. The claim was denied, and thereafter appellant commenced this action. His first and fourth causes of action are predicated upon alleged negligence in the dissemination of inaccurate river height forecasts. He also pleaded second, third and fifth causes of action alleging negligent release of water from state-operated dams.

Respondents' demurrer to each of the five causes of action alleged in appellant's second amended complaint was sustained without leave to amend, and judgment was entered pursuant thereto.

For reasons hereinafter set forth, we conclude that the demurrer should not have been sustained without leave to amend as to the first and fourth causes of action predicated upon erroneous dissemination of information, but was properly sustained as to the other causes of action which were unsupported by a precedent claim as required by the Government Code.

Although the principal issue in the case is whether respondent State of California and its respondent employees are clothed with governmental immunity, we are confronted with the threshold question whether appellant has stated a cause of action under the general laws of negligence. First, respondents asserts that a recipient of a weather forecast cannot, as a reasonable person, rely upon its accurateness because it is common knowl-

edge that weather forecasts of future conditions are not statements of fact. It is understood that such predictions are subject to the vagaries of nature and that the caprice of the elements occasionally cause a weatherman's predictions to go awry.

We cannot argue with the reason or the logic of this proposition, but it is not applicable to the pleadings before us. Appellant does not rest his allegations of negligence upon the mere fact the forecast turned out to be wrong; he has pleaded specific acts of negligence in the gathering and evaluating of known facts. In the fourth cause of action he alleges that it was the duty of named defendants, employees of the State of California, to manage, control or operate the Department of Water Resources Office of the State of California in Sacramento, whose duty it is "to take reasonable efforts to stay informed of all sources of the increase of the water level, and to stay currently informed of the river height, and to use reasonable care in estimating the potential water height, and to disseminate accurate information about the river." Again, appellant alleges that "he is informed and believes and thereon alleges that there was a breakdown of some sort in the operation of the office and its river depth measuring stations, including the possibility that there was a serious miscalculation by one of the employees in the office and those in charge of the office negligently failed to detect this miscalculation. . . . that each of the defendants above named had actual knowledge of the breakdown or had they exercised due care, should have had knowledge of this breakdown in time to prevent the dissemination of inaccurate information as herein alleged."

Respondents' other argument in regard to pleading negligence is that forecasts of this character are a public service for the benefit of the public generally and therefore appellant cannot claim a duty owed him and, accordingly, he cannot claim a breach of a duty. The facts alleged, however, negate this argument, as appellant pleaded not only that businessmen along the river use and rely on flood forecast information but, additionally, that on December 22, 1964, he "telephoned the office to determine the maximum height to which the river would rise; plaintiff identified himself as a businessman with a great deal at stake in a proper estimate in the river height." He further alleged that in reliance upon this information he secured his marina docks so they would float at a water level two feet above the maximum forecast by appellants.

Thus appellant has pleaded facts which take him out of the realm of an amorphous public receiving general information, and placed himself in the position of a businessman by identifying himself as such and making personal inquiry and relying upon the information given him. ■ It may well be that if given the opportunity appellant will be unable to prove any

of the facts alleged, to the satisfaction of a court, but on this appeal from a judgment entered pursuant to demurrer to the complaint sustained without leave to amend, we accept the allegations of the complaint as factually correct. (*Stigall* v. *City of Taft*, 58 Cal.2d 565, 567 [27 Cal.Rptr. 441, 375 P.2d 289].) ■ Moreover, it must be owned that the pleadings of duty and reliance may well be subject to special demurrer, but under the well established rules of pleading, a demurrer is not properly sustained without leave to amend upon the ground of failure to state a cause of action in negligence, unless it is clear that the plaintiff cannot amend his complaint to state a cause of action. (*Wennerholm* v. *Stanford University School of Medicine*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Katenkamp* v. *Union Realty Co.*, 6 Cal.2d 765, 769 [59 P.2d 473]; 2 Witkin, Cal. Procedure (1954) Pleading, § 505, p. 1496.) The record, here, does not reflect that appellant cannot amend his complaint to allege facts sufficient to state a cause of action in negligence.

We turn to the question of governmental immunity. Appellant contends he has stated a cause of action under Government Code section 820, which provides in part that: "(a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person."

Respondents counter that the activities upon which the complaint is predicated involve the exercise of discretion and are within the governmental immunity provided by section 820.2, which reads: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." The Legislative Committee Comment tells us this section restates the pre-existing California law. (Note to Gov. Code, § 820.2, West's Annotated Cal. Codes.) However, prior to the enactment of the 1963 California Tort Claims Act, activities deemed discretionary and clothed with immunity are not clearly defined. In fact, the decisions filed subsequent to the act, up to *Johnson* v. *California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], follow no definitive criterion and rest largely upon facts peculiar to the particular case. Generally speaking, courts have used two approaches to the question of immunity, one of which finds immunity where to impose liability would create the "danger that public employees will be insufficiently zealous in their official duties," a theory elaborated by Judge Learned Hand. The other purports to distinguish a discretionary act within the ambit of section 820.2 from an excluded ministerial act, by a refined, sometimes subtle if not tenuous, analysis of the characteristics of the performance.

The Supreme Court, in *Johnson* v. *California, supra,* took a fresh ap-

proach to the question by rejecting the Judge Hand postulate that public officials will be insufficiently zealous unless immunity attaches to their discretionary acts. The court said it was motivated largely by the fact the 1963 Tort Claims Act, Government Code section 825.6, requires an employee to "indemnify the public entity" only in instances where the employee acted outside the scope of his employment or "acted with actual fraud, corruption, or malice." (P. 791.) The court also rejected the reasoning of cases purporting to distinguish between discretionary acts and ministerial acts, upon the ground this is an impractical and unrealistic exercise in semantics. (P. 787.) After discarding the semantic and zealous-performance criteria for determining when an act involves an exercise of discretion and immunity attaches, the Supreme Court formulated a new criterion, new insofar as California is concerned, for determining when a governmental activity is within the ambit of discretion as delineated in section 820.2. The court used the doctrine of separation of powers as scaffolding to support its new "touchstone" of "judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government." (P. 793.) Leaning heavily upon the language of *Dalehite* v. *United States* (1953) 346 U.S. 15 [97 L.Ed. 1427, 73 S.Ct. 956], the court equated the language "discretion vested in him" (§ 820.2) with "basic policy decisions." In an exposition of the term "policy making" the court said the distinction is "sometimes described as that between the 'planning' and 'operational' levels of decision-making." The court speaks of "areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision." (P. 794.)

Respondent argues that the rule of *Johnson* should not be construed to cover the activities here involved because the magnitude of the risk might cause abandonment of this and similar beneficial public services. The argument is an extension or inversion of the Judge Hand postulate, simply substituting the public entity for the employee. The upshot of the argument is that the public entity may eliminate the public service rather than risk the disastrous consequences of governmental liability arising from a negligently prepared forecast.

Our holding, of course, is limited to the pleadings peculiar to this case, and we doubt that it portends ramifications as ominous as respondents foresee. In any event, from the cases cited by the Supreme Court in *Johnson* to illustrate application of the criteria,[1] it seems clear that the

---

[1]In *Johnson* v. *California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the following cases are analyzed at pages 796-797: ". . . *United States* v. *Washington* (9th Cir. 1965) 351 F.2d 913, 916 (decision as to where to place wire across canyon

pleadings before us come within the rationale of that case. ■ Thus we hold that the determination to issue flood forecasts is a policy-making function, a discretionary activity within the scope of governmental immunity, while gathering, evaluating and disseminating flood forecast information are administrative or ministerial activities outside the scope of governmental immunity. Consequently the question whether these unprotected acts were performed negligently must be determined from the facts of the case.

The answer to respondents' public interest argument does not lie in an attempt by this reviewing court to evade the rule of *Johnson* by an attenuated definition of "discretion" designed to subsume administrative duties of this character that carry out policy decisions. In the past, when public interest justified insulating a governmental activity with immunity, the Legislature provided it by statute. For example, the Legislature insulated governmental entities against liability resulting from the ministeral act of a government employee in the area of fire protection (Gov. Code, §§ 850.2, 850.4). In *Heieck & Moran* v. *City of Modesto,* 64 Cal.2d 229 [49 Cal.Rptr. 377, 411 P.2d 105], a loss was suffered when firemen were unable to prevent the spread of fire to plaintiff's property because city employees had closed a valve in the water main and there was no water in the fire hydrants; the valve had been closed to permit relocation of certain water mains and, although the relocation had been completed at least a month before the date of the fire, the valve had not been turned on. Palpably this was a negligent ministerial act, but the Supreme Court held Government Code sections 850.2 and 850.4 immunized the city from liability.

The Legislature has also provided immunity to certain public employees exercising ministerial functions, such as a public employee exercising due

---

was assumed to be discretionary, but failure to warn pilot was not); *United Air Lines, Inc.* v. *Wiener* (9th Cir. 1964) 335 F.2d 379, 397-398, cert. dism. *sub. nom. United Air Lines, Inc.* v. *United States* (1964) 379 U.S. 951 [13 L.Ed.2d 549, 85 S.Ct. 452] (decision to conduct air flights was discretionary, but failure to warn commercial airline was not); *United States* v. *White* (9th Cir. 1954) 211 F.2d 79, 82 (decision not to 'dedud' army firing range assumed to be discretionary, but telling person about to go onto range that it was safe not discretionary); *Costley* v. *United States* (5th Cir. 1950) 181 F.2d 723, 724-725 (discretionary function to admit patient to hospital, but no immunity for treatment thereafter); *Bulloch* v. *United States* (D. Utah 1955) 133 F.Supp. 835, 889 (decision as to how and when and in what manner to conduct nuclear tests was discretionary, but failure to give proper notice was not); *Hernandez* v. *United States* (D. Hawaii 1953) 112 F.Supp. 369, 371 (discretionary to erect road block, but failure to warn of the hazard created was not); *Worley* v. *United States* (D. Ore. 1952) 119 F.Supp. 719, 721 (decision to use coyote traps assumed to be discretionary, but failure to warn is not).

"These cited cases establish the principle that, although a basic policy decision (such as standards for parole) may be discretionary and hence warrant governmental immunity, subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence."

care in the execution or enforcement of any law (§ 820.4); a public employee who issues, denies, suspends or revokes, or fails to so act, in regard to any permit, license, certificate, approval, order or similar authorization (§ 821.2); a public employee who fails to make an inspection, or makes an inadequate or negligent inspection of any property (§ 821.4); a public employee instituting or prosecuting any judicial or administrative proceeding within the scope of his employment (§ 821.6); a public employee entering upon property where such entry is expressly or impliedly authorized by law (§821.8); a public employee where money is stolen from his official custody unless the loss is sustained as the result of his own negligent or wrongful act or omission (§ 822); a public employee acting in the scope of his employment where an injury is caused by his misrepresentation, whether or not such representation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice (§ 822.2).

There remains the argument of respondents and amici curiae that the complaint alleges negligent misrepresentation within the ambit of Government Code section 818.8, which provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

In support of the argument, a number of cases from other jurisdictions, particularly federal court cases, are cited. However much in point the citations may be, they are not applicable here in the face of the Supreme Court's definitive analysis and exposition of the term "misrepresentation" appearing in *Johnson* v. *California, supra,* 69 Cal.2d at page 800: "In short, 'misrepresentation,' as a tort distinct from the general milieu of negligent and intentional wrongs, applies to *interferences with financial or commercial interest.* The Legislature designed section 818.8 to exempt the governmental entity from this type of liability." (Italics added.)

█ Applying the foregoing criteria to the facts of this case, we find that although appellant suffered a commercial loss in the sense that his business installations were damaged, the loss did not result from a commercial transaction between him and the state, nor from the state's interference with his commercial transactions. The complaint alleges a service gratuitously performed by the state in a negligent manner, resulting in physical damage to property. As there is no allegation of a tortious interference by the state with appellant's commercial activities within the rationale of *Johnson,* we conclude that section 818.8 does not apply to this case.

█ To summarize, since there is nothing in the pleadings to indicate that the state employees charged with negligence were engaged in policy or decision making, or that their activities were covered by a specific immunity statute, the order sustaining demurrer without leave to amend

as to the first and fourth causes of action, predicated upon negligent dissemination of river height forecasts, must be reversed.

■ The second, third and fifth causes of action, predicated upon alleged negligent release of water from state-operated dams, present a different and additional problem. Appellant's claim presented to the State Board of Control alleged that his damages resulted from erroneous information regarding the anticipated rise in the level of the Sacramento River. No mention is made of negligence in the operation of the dams. Hence, in the light of the requirement (Gov. Code, § 910 et seq.) that an action of this character be preceded by a proper claim, the demurrer as to these causes of action was properly sustained without leave to amend.

The judgment is reversed insofar as the first and fourth causes of action are concerned, and the case is remanded to the trial court with instructions to permit appellant to amend his first and fourth causes of action if he is so disposed. The judgment is affirmed as to the second, third and fifth causes of action.

Gargano, J., concurred.

**DAVID, J. pro tem.,**\* Concurring and Dissenting.—The judgment of the trial court should be affirmed. Upon appeal, the basic question is whether the second amended complaint before the trial court states a cause of action, or whether any can be stated, under the applicable law. Independently of the declarations of immunity stated in Government Code sections 815, 818.8, 820.2 and 822.2, and Water Code section 6028, I conclude there is no legal cause of action stated. The deficiencies in the second amended complaint rest in the applicable law, and not in factual deficiencies which might be obviated by amendment.[1] I concur in holding that the second, third and fifth causes of action are barred by failure to present a proper claim as a condition precedent to support them, but, in addition, conclude no right of action existed had a proper claim been filed. The judgment of a trial court dismissing an action after sustaining a demurrer without leave to amend will be affirmed upon appeal, though the considerations may differ, or be in addition to, those relied upon by the trial court. (*Bank of America* v. *Vannini,* 140 Cal.App.2d 120, 126-127 [295 P.2d 102]; *People* v. *Evans,* 249 Cal.App.2d 254 [57 Cal.Rptr. 276].)

---

\*Retired judge of the superior court, sitting under assignment by the Chairman of the Judicial Council.

[1]The cause stands or falls upon the allegations before us: *Vilardo* v. *County of Sacramento,* 54 Cal.App.2d 413 [129 P.2d 165]. Since this is appellant's second amended complaint, there is no reason not to apply the presumption that he has stated his strongest case. (*Faulkner* v. *California Toll Bridge Authority,* 40 Cal.2d 317, 328 [253 P.2d 659]; *Ruinello* v. *Murray,* 36 Cal.2d 687, 690 [227 P.2d 251].)

Appellant does not state a cause of action for injury to and loss of his property situated within the floodway of the Sacramento River because (a) the management and control of flood waters on this navigable stream, exercised jointly with the United States, is under the police power, and any injury or damage is *damnum absque injuria*; (b) no right of action accrues to anyone because of the increase in, or acceleration of, the flow in the river; (c) the control of dams and the operation thereof, including their overflow and the release of water therefrom, is covered by the immunity declared by Water Code section 6028; and (d) the claim filed with the State Board of Control did not assert any injury from negligent failure to control flood waters, nor improper management of the dams.

Further, appellant does not state a cause of action based upon the allegedly negligent forecast of the height flood waters would reach in the Sacramento River because (a) no public or private duty is shown to have existed as a matter of law at the time of appellant's alleged damage, due to him in relation to such forecasts; (b) estimates of future conditions of weather or water are not the representations of past or present facts which are actionable, and if they are held actionable because of respondent's superior knowledge or opportunity to deduce the future condition, still no cause of action is stated because the state and its employees are immune from suit for negligent misrepresentation (Gov. Code, §§ 818.8 and 822.2); and (c) flood forecasts involve the evaluation as well as the collection of data, a fact-finding or quasi-judicial process involving judgment and discretion, thereby falling directly into the immunity declared by Government Code section 820.2.

Neither the control of flood waters in a vast river system nor the weather and flood level forecasting are functions which have counterparts in nongovernmental relationships. So far as research has revealed, the only cases which involve the issues directly presented here (under the parallel provisions of the Federal Tort Claims Act) are those decided *sub. nom. National Mfg. Co.* v. *United States* (8th Cir. 1954) 210 F.2d 263, cert. den. 347 U.S. 967 [98 L.Ed. 1108, 74 S.Ct. 778], cited with approval in *United States* v. *Neustadt,* 366 U.S. 696, 702 [6 L.Ed.2d 614, 619, 81 S.Ct. 1294]; *Bartie* v. *United States* (5th Cir. 1964) 326 F.2d 754, cert. den. 379 U.S. 852 [13 L.Ed.2d 55, 85 S.Ct. 98]. (Consult also *Western Mercantile Co.* v. *United States* (W.D.Mo. 1953) 111 F.Supp. 799; *Mid-Central Fish Co.* v. *United States* (W.D.Mo. 1953) 112 F.Supp. 792.) In the principal case, it was asserted that property damage could and allegedly would have been avoided by the owner's removal of his property from the path of the floodwaters, but for the negligently inaccurate forecast. Immunity of the government and its employees was declared to defeat the actions; and in a concurring opinion it was noted that despite the stated

immunities no cause of action existed at all. Another similar result was reached in *Bartie* v. *United States, supra,* in respect to damage caused by Hurricane Audrey in June 1957.

I am satisfied that neither the holding nor the applicable dicta of *Johnson* v. *California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], require a contrary conclusion. It is in this respect that the principal differences arise with the conclusions reached by my eminent colleagues, perplexed by the apparent recrudescence of the conflicts between judicial doctrine and legislative intention, thought to have been definitively settled by the Tort Claims Act of 1963.

I turn to the amplification of these considerations.

The pleading before us is subject to the judicial notice of the court, even in contravention of its allegations. (*Dillard* v. *McKnight,* 34 Cal.2d 209 [209 P.2d 387, 11 A.L.R.2d 835]; *Bourdieu* v. *Seaboard Oil Corp.,* 38 Cal.App.2d 11 [100 P.2d 528].) Where a claim of liability is asserted against the state, or its officers or employees as such, that liability must be based upon a function or duty prescribed by law (cf. *Douglass* v. *City of Los Angeles,* 5 Cal.2d 123, 128 [53 P.2d 353]). No liability can arise against the state by misfeasance, laches, or an unauthorized exercise of power. (*Lertora* v. *Riley,* 6 Cal.2d 171, 177 [57 P.2d 140]; *Melvin* v. *California,* 121 Cal. 16, 22 [53 P. 416], citing *Gibbons* v. *United States,* 75 U.S. (8 Wall.) 269 [19 L.Ed. 453].) In public law, it is fundamental that power or duty is not self-created by the action of individuals. (*Foxen* v. *City of Santa Barbara,* 166 Cal. 77 [134 P. 1142]; *Mines* v. *Del Valle,* 201 Cal. 273 [257 P. 530].) Public powers or duties are not varied by usage or enlarged by construction. (81 C.J.S., States, § 81, p. 1037; § 58, p. 978.) "It is an elementary principle that an indispensible factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member." (*Routh* v. *Quinn,* 20 Cal.2d 488, 491 [127 P.2d 1, 149 A.L.R. 215]; *Dahms* v. *General Elevator Co.,* 214 Cal. 733, 737 [7 P.2d 1013]; *Amaya* v. *Home Ice, Fuel & Supply Co.,* 59 Cal.2d 295, 307 [29 Cal.Rptr. 33, 379 P.2d 513].)

In this connection, it should be kept in mind that we are considering the powers and duties of the defendants as they existed in December 1964.[2] No statute, rule or regulation has been cited to us, and none has

---

[2] By Statutes 1965, chapter 1291, page 3176, effective July 15, 1965, as Water Code section 236, it was first provided that "The department, either independently or in cooperation with any person or any county, state, federal, or other agency, is authorized to collect hydrologic data necessary for river forecasting, to make forecasts of

been found, which imposes any duty to forecast stream flow, nor to disseminate information concerning such forecasts. It is true that negligence may be pleaded in general terms, but for liability, the existence of duty must be shown. (*Rubinow* v. *County of San Bernardino,* 169 Cal.App.2d 67, 71 [336 P.2d 968].) The allegations of the complaint before us, nakedly alleging that a duty rested upon the state and its employees to appellant, state only conclusions of law. (*Dillard* v. *McKnight, supra,* 34 Cal.2d 209, re judicial notice of the applicable law; *Jackson & Perkins Co.* v. *Byron-Bethany Irr. Dist.,* 136 Cal.App. 375, 380 [29 P.2d 217, 30 P.2d 516]; *Hancock* v. *Burns,* 158 Cal.App.2d 785, 790 [323 P.2d 456]; *Branham* v. *Mayor & Common Council of San Jose,* 24 Cal. 585; *Colen* v. *Gladding, McBean & Co.,* 166 Cal. 354 [136 P. 289]; *Oppenheimer* v. *Ashburn,* 173 Cal.App.2d 624, 628 [343 P.2d 931].)

The Sacramento River is a navigable stream and a public way. (Harbors & Nav. Code, § 105.) The improvement, management and control of the river, including flood control, is jointly undertaken with the United States. For over a hundred years there have been both legislative and judicial declarations that the recurrent floods on the Sacramento-San Joaquin Rivers have been detrimental to the peace, health, safety and welfare; these declarations resulted in the construction of a vast system of dams, levees, weirs and by-passes to regulate the flow of the rivers, and to minimize the damage from recurrent flooding.

In a long series of cases, referring specially to *Green* v. *Swift,* 47 Cal. 536; *Gray* v. *Reclamation District No. 1500,* 174 Cal. 622, 639 [163 P. 1024]; and *Clement* v. *State Reclamation Board,* 35 Cal.2d 628 [226 P.2d 897], it has been established that the state acts in such matters under the police power, and that damage occasioned by the river flow is *damnum absque injuria.* Any damage claimed by reason of the increased flow of the river, by the overflowing of dams, by the release of water from a dam to avoid the greater calamity of collapse of the dam, or by the acceleration of the flow, is not actionable. (*Clement* v. *State Reclamation Board, supra; Archer* v. *City of Los Angeles,* 19 Cal.2d 19, 24 [119 P.2d 1]; *Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 262-264 [42 Cal.Rptr. 89, 398 P.2d 129]; *San Gabriel Valley Country Club* v. *County of Los Angeles,* 182 Cal. 392 [188 P. 554, 9 A.L.R. 1200]; *Riverside County Flood etc. Dist.* v. *Halman,* 262 Cal.App.2d 510, 519 [69 Cal.Rptr. 1]; *Bauer* v. *County of Ventura,* 45 Cal.2d 276, 282-283 [289 P.2d 1].)

Appellant does not claim that floodwaters overflowed the levees which

stream flow, to provide for flood warning, and to provide for communication necessary for the collection and dissemination of such information." In view of this statute, the importance of the instant decision is apparent.

form the river bank; instead, he claims that the water rose to a height of 29 feet and stayed at that high level for two weeks. It is therefore obvious that there was no defect in the levees between which the stream flowed. The maintenance of works, such as appellant's, situated upon the stream and its banks, is subject to the paramount right in the state and federal governments to the full use of the stream, bed and banks, for their respective purposes. Appellant has not pleaded that any of his works were authorized under permit, as required by Harbors and Navigation Code section 4000 and California Administrative Code, title 23, section 221. The right of access of a riparian or littoral owner may not prevail as against the state in the exercise of its lawful purposes. (65 C.J.S., Navigable Waters, § 67, p. 230.) The appellant made use of the river and adjacent banks with full knowledge of his own peril in times of high water. Throughout the day on December 22, 1964, he inquired concerning the height which the rising river flow would reach. No special duty became owing to him because the state was informed of his peril. The entire river and flood control system was in emergency operation because of the known peril which threatened thousands of persons and millions of dollars worth of property. He was only one of the general public for which the operation was maintained.

In exercising its police power, the cases last cited make it clear that the state is not subject to appellant's claim that there was inverse condemnation of his property.

Water Code section 6028 provides: "No action shall be brought against the State or the department or its agents or employees for the recovery of damages . . . through the operation of any dam upon the ground that such defendant is liable by virtue of any of the following: . . . (b) The issuance or enforcement of orders relative to maintenance or operation of the dam. (c) Control and regulation of the dam. (d) Measures taken to protect against failure during an emergency." Under the facts alleged, I am of the opinion that this statutory provision, and the other considerations reviewed above, are of themselves sufficient to sustain the general demurrer interposed to the second, third and fifth causes of action.

I return to the consideration of appellant's contentions asserting the existence of a cause of action based upon the allegedly negligent misrepresentation of the estimated maximum flood height of the Sacramento River.

If at the time of the 1964 flood, river flow forecasting had been an authorized function, as now provided by Water Code section 236, no private duty would exist and no private right of action would arise for the negligent performance thereof. The well established rule is that failure to perform or inadequate performance of a police-power function such as

this may be a breach of duty owed to the people of the state as a whole, but it does not constitute a legal wrong or injury to a member thereof, giving a right to individual redress. (Rest. 2d Torts, § 288, and comment, on clause (a): "Many legislative enactments and regulations are intended only for the protection of the interests of the community as such, or of the public at large, rather than for the protection of any individual or class of persons. Such provisions create only an obligation to the state, or some subdivision of the state, such as a municipal corporation." See *Routh* v. *Quinn, supra,* 20 Cal.2d 488, negligent computation of tax; *Stang* v. *City of Mill Valley,* 38 Cal.2d 486 [240 P.2d 980]; *Steitz* v. *City of Beacon,* 295 N.Y. 51, 56 [64 N.E.2d 704, 706, 163 A.L.R. 342]; 2 Harper & James, Torts, § 29.2, p. 1608; *Mid-Central Fish Co.* v. *United States* (W.D.Mo. 1953) 112 F.Supp. 792, 797; *Jones* v. *Czapkay,* 182 Cal.App.2d 192, 201 [6 Cal.Rptr. 182].)

The important question posed here, in regard to the allegedly negligent misrepresentation of the estimated flood stage of the river, is whether the appellant, by informing the department of his personal need for accuracy, thereby can impose upon the service generally provided a special duty of care as to him. An affirmative answer has inestimable implications. Suppose A informs the police department he has especially valuable goods in his house, and that he has a special need for their protection. If thieves break in and steal, is there liability because a desk sergeant told A he thought the goods would be safe? Or suppose a fire rages in a business block. B, at the far end of the block, calls the fire department and asks if they think the fire will spread to his property. He is informed by the fire chief that it will not. If, nevertheless, the fire does reach his property, are the chief and the entity he serves to be held liable? If B is told that the fire will reach his property, and at great expense removes his goods from its path, are the chief and his entity liable for the cost when the fire does not reach B's property? If at the time of the nightly television broadcast of the weather reports and predictions, C phones in and says he has hay on the ground and needs to have a correct forecast since he will go to town tomorrow if there is to be no rain, is the station liable if the rain comes while C is away from his field? The answer to these questions is "No." (*Tomlinson* v. *Pierce,* 178 Cal.App.2d 112, 115-116 [2 Cal.Rptr. 700].)

The state calls attention to the fact that other public activities, including crop forecasting, economic forecasting and population forecasting, are state activities and are parallel to that considered here. Amici curiae have called attention to a pending action against the County of Riverside by a plaintiff seeking to recover for loss of bees, bee colonies, and a honey crop, allegedly resulting from negligent dissemination of information by the county Commissioner of Agriculture.

The appellant must fail here, for it is fundamental law that the representation, to be actionable, must be of a past or present fact. (*Lawrence* v. *Gayetty,* 78 Cal. 126, 131 [20 P. 382, 12 Am.St.Rep. 29]; *Wilson* v. *Rigali & Veselich,* 138 Cal.App. 760, 764 [33 P.2d 455]; *Finch* v. *McKee,* 18 Cal.App.2d 90, 93 [62 P.2d 1380]; *Stockton* v. *Hind,* 51 Cal.App. 131, 136 [196 P. 122]; 37 C.J.S. Fraud, § 6, p. 222, § 10, p. 226.) The future is always opinion; it must happen before it is a fact. (*Texas Farm Bureau Cotton Asso.* v. *Craddock* (Tex. Civ. App.) 285 S.W. 949, 950.) A cause of action does not lie for unfulfilled predictions or expectations. (37 C.J.S. Fraud, § 11, p. 231.) This principle was held applicable to flood forecasting and weather predictions in *National Mfg. Co.* v. *United States, supra,* 210 F.2d 263, and in *Coates* v. *United States* (8th Cir. 1950) 181 F.2d 816 [19 A.L.R.2d 840].

The majority opinion concedes the reason or logic of this proposition, but asserts it is inapplicable in view of the claimed negligence in gathering and evaluating known facts upon which the ultimate information given appellant was based. In effect, it is said that immunity for negligent misrepresentation cannot exist if it is alleged that negligent gathering and evaluation of known facts produced the erroneous result.

The United States Supreme Court states that this argument has been made and consistently rejected, since ". . . as was forcefully demonstrated . . . in *Hall* v. *United States, supra* [274 F.2d 69] [it] is nothing more than an attempt to circumvent § 2680(h) by denying that it applies to negligent misrepresentation." (*United States* v. *Neustadt, supra,* 366 U.S. 696, 703 [6 L.Ed.2d 614, 619]; the section of the Federal Tort Claims Act referred to is substantially similar to Gov. Code, §§ 818.8 and 822.2.) The court, in *Neustadt,* considered the effect of an opinion based upon a negligent and inaccurate appraisal of real property.

Misrepresentation, as a tort, differs from fraud and deceit (Civ. Code, §§ 1709, 1710) in that scienter and intent to deceive are characteristics of the latter. The development of negligent misrepresentation as a tort is of recent origin. (Consult Dean Carpenter's *Responsibility for Intentional, Negligent and Innocent Misrepresentation* (1930) 24 Ill. L.Rev. 749, in which he states (p. 759) that most jurisdictions refuse to allow an action for negligent misrepresentation, but argues (p. 756) for an extension of liability on the ground that words are no different than other physical conduct.) The early rule, stated in *Buckley* v. *Gray,* 110 Cal. 339 [42 P. 900, 52 Am.St.Rep. 88, 31 L.R.A. 862], allowed no recovery for negligent misrepresentations except where there was some duty or privity between the one making the statement and the one relying thereon, as in the case of one who had contracted for a title report and relied upon it, or one who employed a surveyor to make a survey and relied upon it, and the like.

The requirement of privity was abandoned by the California Supreme Court in *Biakanja* v. *Irving,* 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], in instances where a plaintiff is a constructive third-party beneficiary to the engagement for an opinion or service between contracting parties. It indicated that imposition of liability is refused when any potential advantage to a third party plaintiff was only a collateral consideration of the transaction, citing for this proposition *MacKown* v. *Illinois Publishing & Printing Co.,*[3] 289 Ill.App. 59 [6 N.E.2d 526], and the leading case of *Jaillet* v. *Cashman,*[4] 115 Misc. 383 [189 N.Y.S. 743] affirmed 235 N.Y. 511 [139 N.E. 714], and 202 App.Div. 805 [194 N.Y.S. 947].

In *Biakanja* v. *Irving, supra,* the defendant, not a qualified attorney, drew a will for a testator, the invalidity of which was to partially disinherit the plaintiff, contrary to the testator's intention. Despite lack of privity, the plaintiff was allowed to recover.

Judicial notice may be taken that in December 1964 the Department of Water Resources had supervisory powers over the maintenance and operation of the flood control works of the Sacramento River Flood Control Project (Wat. Code, § 8360) and the maintenance and operation of certain units or portions of the works involved, such as levees, bypasses, channels and overflow channels of the Sacramento River (Wat. Code, § 8361). It is apparent that for the department's own purposes it was necessary to estimate the height, speed and volume of river flows. It is a matter of common knowledge that this involves collection and consideration of data respecting the snowfall in the Sierras, and the precipitation thereon, the melting of the former, and the state of the latter under predicted future weather conditions, the runoff on the multitude of watersheds, the capacity and rate of flow in the Sacramento River and its various tributaries, the safe capacity of dams, their available storage capacity, and the rate of flow in and out of them, the effect of any break in the levees, and of diversion of water in the safety valves and bypasses, and the effect on the outflow by the predicted tides at the debouchment of the rivers in Suisun Bay. The temperature which melts the snow, the precipitation of snow and rain from the skies, are uncontrollable factors in incidence, duration and amounts.

---

[3] The newspaper published a formula submitted by a subscriber for an "Effective Remedy for Dandruff Woes" which was said to have been prescribed by a physician. In reliance thereon, a reader had the preparation compounded by a druggist, and used it, with direful results. Recovery was denied. Cf. *Hanberry* v. *Hearst Corp.* (1969) 276 Cal.App.2d 680 [81 Cal.Rptr. 519].

[4] In this case, it was held that an action would not lie against an association, engaged in supplying its subscribers with a news ticker service, at the instance of a third party who, upon seeing an erroneous news report, was impelled to sell his stock at a loss. There was no duty nor privity, he being only one member of the general public which the report might reach.

It is common knowledge that such predictions are frequently thwarted by nature. Along the river, readings are taken of the height of the flow at difference times and places, constituting a running post-audit on the opinions and conclusions previously reached. Can appellant, as a third party gratuitously given upon request information as to an estimated future height of the river flow, maintain this suit on the ground he received negligent misinformation? In this connection, it is to be noted that the direct cause of damage alleged was the rise in the waters of the river. The information given had no causal connection with that fact. As the water level rose inch by inch, he had as full knowledge of what was happening as did respondents. (Cf. *Belcher* v. *City & County of San Francisco,* 69 Cal.App 2d 457 [158 P.2d 996].) His pleaded reliance was equivocal; he tied his docks for a flood two feet higher than that indicated in the information received. In *Merrill* v. *Buck,* 58 Cal.2d 552, 561-562 [25 Cal.Rptr. 456, 375 P.2d 304], the rule is stated: "Privity of contract is not necessary to establish the existence of a duty to exercise ordinary care not to injure another, but such duty may arise out of a voluntarily assumed relationship if public policy dictates the existence of such a duty," where misrepresentation is asserted.

The appellant therefore cannot escape the legal dilemma posed by these considerations: (1) Any declaration of "public policy" to create new and unprecedented liabilities in his favor against the state and its officers must be declared by statute, under Government Code section 815, excluding therefrom by definition decisional law (Gov. Code, §§ 811, 811.8). (2) The majority opinion holds that the tort of misrepresentation is solely that defined in *Johnson* v. *California, supra,* 69 Cal.2d 782, 800. If that is so, appellant has not stated a cause of action under existing law, and if he has, then immunity bars his cause of action, under Government Code sections 818.8 and 822.2. (3) The allegations of the complaint obviously were framed in conformity with Restatement Second of Torts, section 311, page 106, relating to negligently furnished gratuitous information. If this section is the law in California then, again, the causes of action based upon negligent misrepresentation are barred by the code sections last cited.

In declaring immunity for misrepresentation and negligent misrepresentation in Government Code sections 818.8 and 822.2, the Legislature recognized the existence of both torts. Only the first, defined in Restatement of Torts, section 552,[5] was discussed in *Johnson* v. *California, supra.* The

---

[5]Restatement of Torts, section 552, reads as follows: "One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and (b) the harm is suffered (i) by the person or one of the class of persons for whose guidance

tort of negligent misrepresentation is separately defined in section 311 of the Restatement Second of Torts, thusly: "Negligent Misrepresentation Involving Risk of Physical Harm. (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results (a) to the other, . . . (2) Such negligence may consist of failure to exercise reasonable care (a) in ascertaining the accuracy of the information, or (b) in the manner in which it is communicated." By definition, it is indicated that "physical harm" includes injuries to person or property.

A note to section 311 draws a distinction in reference to section 552: "In this respect the rule stated here differs from that stated in § 552, which is concerned only with pecuniary loss suffered as the result of a negligent misrepresentation.[6] Where only such pecuniary loss is sustained, the gratuitous character of the information prevents any liability for negligence in giving it. Where, as under the rule stated in this Section, the harm which results is bodily harm to the person, or physical harm to the property of the one affected, there may be a liability for negligence even though the information is given gratiutously and the actor derives no benefit from it."[7]

Therefore it appears to me that plaintiff colorably has stated a cause of action under section 311, if there is any basic duty due to him, for unfulfilled predictions upon which he was entitled to rely. But appellant's second amended complaint flounders, for these causes of action are embraced within the immunities afforded by Government Code sections 818.8 and 822.2. Section 818.8 provides, "A public entity is not liable for an injury

the information was supplied, and (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith."

[6]Generally, consult *Gagne* v. *Bertran,* 43 Cal.2d 481 [275 P.2d 15]. There are many public contract cases where the character of the conditions to be encountered, the amount of excavation to be done, and the like, have been misrepresented. Rescission, or allowance in quantum meruit for extra work done, is the usual remedy against the governmental entity, but suit in tort for misrepresentation is virtually unknown. (Consult: *Gogo* v. *Los Angeles County Flood Control Dist.,* 45 Cal.App.2d 334 [114 P.2d 65]; *Wunderlich* v. *California,* 65 Cal.2d 777 [56 Cal.Rptr. 473, 423 P.2d 545]; *E. H. Morrill Co.* v. *California,* 65 Cal.2d 787 [56 Cal.Rptr. 479, 423 P.2d 551]; *City of Salinas* v. *Souza & McCue Constr. Co.,* 66 Cal.2d 217 [57 Cal.Rptr. 337, 424 P.2d 921]; *Thomas Kelly & Sons, Inc.* v. *City of Los Angeles,* 6 Cal.App.2d 539, 542 [45 P.2d 223].)

[7]This is a common type of situation where relief is sought. (Consult: *Miller* v. *City & County of San Francisco,* 187 Cal.App.2d 480 [9 Cal.Rptr. 767], representation that a sewer line would be relocated at public expense; *Brown* v. *City of Los Angeles,* 267 Cal.App.2d 849 [73 Cal.Rptr. 364], misrepresentation as to use of property permitted under the zoning ordinance; *Barbaria* v. *Independent Elevator Co.,* 139 Cal.App.2d 474, 482 [293 P.2d 855]; *Hanberry* v. *Hearst Corp., supra,* 276 Cal.App.2d 680.)

caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Section 822.2 provides, "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice." If one can infer that *Johnson* v. *California, supra,* 69 Cal.2d 782, in its statements concerning misrepresentation, holds that there is no liability for the tort of misrepresentation, except under the conditions therein stated, the substance of section 552 of the Restatement of Torts, appellant has no cause of action.

Upon appeal, I am concerned additionally with the relevance of Government Code section 820.2: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the discretion vested in him, whether or not such discretion be abused." By Government Code section 815.2, subdivision (b) nonliability of the employee carries with it nonliability of the principal, the public entity.[8] The federal cases cited to the court made this argument most attractive, since they squarely hold under comparable sections of the Federal Tort Claims Act that flood and weather forecasting were discretionary functions, and denied liability. (Consult, again, *National Mfg. Co.* v. *United States, supra,* 210 F.2d 263, approved in *United States* v. *Neustadt, supra,* 366 U.S. 696; *Coates* v. *United States, supra,* 181 F.2d 816.) The point is made that the process of prediction involves judgment and discretion, qualifying for the exemption.

The holding in *Johnson* v. *California, supra,* 69 Cal.2d at page 794, reasserted and applied the long-established distinction between discretionary choices of courses of action, on the one hand, and negligence in carrying out the choice on the other.[9]

The situation alleged here does not lend itself to any characterization as ministerial action. The telephone conversation was merely the conduit for the forecast, a continuum of the discretionary evaluation, which allegedly

---

[8]"The Legislature, in creating this exemption, must have had in mind those areas in which private defendants typically face liability for 'misrepresentation'; *in other areas, immunity for 'misrepresentation' would be superfluous.*" (*Johnson* v. *California, supra,* 69 Cal.2d 782, 800. Italics added.)

[9]In *Johnson* v. *California, supra,* 69 Cal.2d 782, 794, it is stated: "Our proposed distinction, sometimes described as that between the 'planning' and 'operational' levels of decision-making (cf. *Dalehite* v. *United States, supra,* 346 U.S. 15, 35-36 [97 L.Ed. 1427, 1440-1441, 73 S.Ct. 956]), however, offers some basic guideposts, although it certainly presents no panacea." No notice is taken of the long established California doctrine: *Sievers* v. *City & County of San Francisco,* 115 Cal. 648 [47 P. 687, 56 Am. St.Rep. 153]; *Perkins* v. *Blauth,* 163 Cal. 782, 789 [127 P. 50]; *Dillwood* v. *Riecks,* 42 Cal.App. 602, 610 [184 P. 35]; 7 So.Cal.L.Rev. 75, 78, 88. *Doeg* v. *Cook,* 126 Cal. 213 [58 P. 707, 77 Am.St.Rep. 171], is cited, but not on this point.

was negligently made. I am not concerned with the discretionary choice to make the forecast; I am concerned with the judgment and discretion involved in estimating the river flows.

As a matter of statutory construction, the statutory definitions of "public entity" (Gov. Code, § 811.2) and of "employee" (which includes officers, agents, servants and employees; see Gov. Code, §§ 810.2, 810.4) include all branches and agencies of government in this state, at every level. It does not exclude those who are on a "low rung" on the bureaucratic ladder, if in fact the law has *vested discretion* in them. What discretion is so vested must be determined in the first instance by consideration of the authority under which one is empowered, authorized or directed to use his judgment and discretion; whether that be the Constitution, a statute, charter, ordinance or regulation.

It is the plethora of such laws applied to so many public functionaries that has made it virtually impossible to enunciate a tidy formula to define *discretion;*[10] nor need it be defined, except in specific relation to specific powers and duties. Confusion comes by failure to consider the entire phrase, "the exercise of the *discretion vested in him"* (italics supplied). Whether discretion exists is not determined by considering the legislative purposes for granting immunity, nor yet by evaluation of legislative purposes in granting it, in terms of judicial policy.[11] The Legislature, in the sections cited above, has granted the immunity, whatever its bases may have been in establishing such a policy of immunity.

The delegation of governmental powers and duties in many fields has been detailed and precise, and may expressly indicate or limit the choices of action or inaction conferred. Or as administrators would prefer, only the goals to be attained may be described, leaving the intermediate steps completely to their discretion.[12] To a degree, the existence of discretion has been spelled out in terms of its antonym, the ministerial duty. If one has

---

[10]As the courts have declared, in *Johnson* v. *California, supra,* 69 Cal.2d 782; *Elder* v. *Anderson,* 205 Cal.App.2d 326, 331 [23 Cal.Rptr. 48]; *Morgan* v. *County of Yuba,* 230 Cal.App.2d 938, 942 [41 Cal.Rptr. 508]; *Glickman* v. *Glasner,* 230 Cal.App.2d 120, 125 [40 Cal.Rptr. 719]; *Ne Casek* v. *City of Los Angeles,* 233 Cal.App.2d 131, 134-135 [43 Cal.Rptr. 294]; *Doeg* v. *Cook,* 126 Cal. 213, 216 [58 P. 707, 77 Am.St.Rep. 171].

[11]This curious inversion, to which reference is made, is a principal difficulty in giving effect to or interpreting the dicta of *Johnson* v. *California,* 69 Cal.2d 782, 787 [73 Cal. Rptr. 240, 447 P.2d 352]: "We must still determine what actions are 'discretionary.' (Gov. Code, § 820.2.) In so doing, we must of course rely primarily on the legislative purposes for granting dual immunity—to both government and official—for the latter's 'discretionary' actions."

[12]The Legislature having specified the termini, the State Highway Commission has complete discretion as to the route, and all details respecting its construction. (*Holloway* v. *Purcell,* 35 Cal.2d 220 [217 P.2d 665].) The state is not liable for damage caused by the rerouting. (*Rose* v. *California,* 19 Cal.2d 713 [123 P.2d 505].)

a special right to performance of a duty arising out of an office, trust or station, he may compel the performance of that duty, and in some instances may recover damages for injury resulting from nonperformance. (Code Civ. Proc., § 1094 et seq.) In contrast, the general attribute of official discretion is that action or inaction pursuant thereto is for the purposes or benefit of the public served by the functionary, and not for any specific individual.

If an official has discretion to act or not to act under choices #1, #2, #3, and #4, presented by the matter before him, no action lies against him for adopting #2 and not the others. This does not result because of any statutory or judicial immunity. Rather, it is because having the choice, there was no breach of duty at all in making the choice, and hence, no right of action. It therefore is logically erroneous to assume that an immunity statute relates solely to the initial choice of alternatives, since in that case there would be no need for it.[13]

Cited in illustration of the preexisting California law perpetuated by the 1963 liability sections by the Legislative Committee is *White* v. *Towers*, 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636]. It states that the rule is settled that governmental officials are not liable for discretionary acts within the scope of their authority, and this rule applies not only to the accomplishment of the main purpose for which the office was created, but also to acts which although incidental and collateral, serve to promote those purposes.[14]

The formal process of choice, or decision, contemplates the recognition of an issue or problem, the accumulation of facts and weighing their effect, the consideration of any formal limits upon the authority to decide (jurisdiction), the recognition of possible alternatives of action or inaction, the consideration of the advantages and disadvantages of each, including expediency, the choice of the course to be followed, and of the procedure, means and methods to be employed. This process of formal decision-making is essentially the same, whether it be followed by a business executive, a judge, a legislative body, or an administrator at any level. It may be very formal, but often the trained administrator almost subconsciously may pass through the elements and act.

To have a choice is not the equivalent of official discretion *vested in him*. The one signing authorized bonds may choose what brand of ink he uses. Discretion vests, I submit, when the authorizing law permits the officer or

---

[13]The specific immunities, said to exemplify the Legislature's intent, are not confined to the initial choice of action. Consult page 773, fn. 22, *infra*.

[14]Thus, if flood forecasting is incident to the general power of respondent department, immunity applies. *White* v. *Towers* is discussed, *infra*.

employee to decide or control a matter in such a way that the decision has juridical or administrative consequences upon persons, things, events, plans or procedures. Discretion may be "vested" in many instances because the legal directive or authority is silent as to the time, place, manner or means of its execution, requiring the officer or employee to follow his own judgment in all these matters.

But the immunity specified in Government Code section 820.2 includes another type of judgment and discretionary act if it, as stated, codifies the preexisting California law, i.e., fact-finding, exemplified in a great number of cases.

The basic expression of the California law is found in *Downer* v. *Lent* (1855) 6 Cal. 94 [95 Am.Dec. 489]. The Board of Pilot Commissioners had ordered the plaintiff to surrender his pilot's license, and published notice he was no longer authorized to act as a pilot. Thereupon, he sued the individual board members for damages in the sum of $2,500. The Supreme Court said, "It is beyond controversy, that the power of the Board of Pilot Commissioners is *quasi* judicial, and they are not civilly answerable. They are public officers to whom the law has entrusted certain duties, the performance of which requires the exercise of judgment. They are unlike a ministerial officer, whose duties are well defined, and who must fail to execute them properly at his own peril.

"Whenever, from the necessity of the case, the law is obliged to trust to the sound judgment and discretion of an officer, public policy demands that he should be protected from any consequences of an erroneous judgment."

A fundamental purpose for declaring immunity in such instances, both for the employee and the public entity he serves, is a need to fix responsibilities and to attain finality of decision. Using the term as defined in the Government Code, a "public employee" is responsible to the electorate, his appointing power or his administrative superiors for his performance of duty. If in hindsight, a jury or even a judge is permitted to redetermine what he should have done under a given set of circumstances where he had judgment and discretion, the ultimate power of decision is transferred to those not responsible.[15] The result of each lawsuit becomes a redefinition of his duty. In successive actions involving similar circumstances, the employee may be tossed between Scylla and Charibdis; or it may be more classical to say he is on the Procrustean bench.[16]

---

[15] 1 Cooley, Constitutional Limitations (8th ed.) 447-448; consult *Johnston* v. *District of Columbia*, 118 U.S. 19 [30 L.Ed. 75, 6 S.Ct. 923]; 2 Harper & James, Torts, section 29.9.

[16] Cf. *Inyo Chemical Co.* v. *City of Los Angeles*, 5 Cal.2d 525 [55 P.2d 850], with *Southern Pac. Co.* v. *City of Los Angeles*, 5 Cal.2d 545 [55 P.2d 847], wherein opposite conclusions were reached by two juries on the same facts relative to liability.

Who is to determine whether in fact an error of judgment has been made? The determination itself involves judgment or discretion to the same degree as the original issue. A second determination may be as prone to error as the first, and unfair to the employee or the entity, because of judging the prevision by the result.

In *Johnson* v. *California, supra,* 69 Cal.2d 782, 794, footnote 8, it is stated that, "Immunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government." This is merely a new way of stating that when the Legislature decrees immunity, the courts must follow the law. (Cf. *County of San Mateo* v. *Maloney,* 71 Cal. 205, 208 [12 P. 53].) The "policy decision" whether to establish immunity (or under another view, not to give consent to suit) thus rests with the Legislature, and has been made by it here. The further dicta in *Johnson* (p. 793) indicating that the discretionary-immunity doctrine depends upon judicial self-restraint and abstention, based upon the separation of powers, is novel in California law. It is not a workable tool since the enactment of section 820.2. It does not comport with the preexisting law in that a great number of the cases involve local government, to which the doctrine of separation of powers does not apply (*Staude* v. *Election Comrs.,* 61 Cal. 313; cf. *Laisne* v. *State Board of Optometry,* 19 Cal.2d 831, 847 [123 P.2d 457], either mandamus or certiorari lies to review the action of local boards). Government Code section 820.4 and following, which the Legislative Committee report gave as examples of the discretionary immunity, stated in general in section 820.2 (and given correlative effect as to the state by § 815.2, subd. (b)), illustrate that the Legislature did not limit the granted immunity to employees making high level "policy decisions" in "coordinate branches" of the government. Discretional immunity has been applied to judges themselves, as in *Wyatt* v. *Arnot,* 7 Cal.App. 221, 226 [94 P. 86], where a judge was not liable in damages because of failure to decide a case before leaving office; and in *Pickett* v. *Wallace,* 57 Cal. 555, holding a Supreme Court justice not liable for a judgment given.

If vested discretion is equated with the making of policy decisions, there is an immediate necessity to define, with exactitude, what are "policy determinations." Like Omar Khayam, one leaves this consideration by the same door he entered before the argument. Based upon the definition of "policy," a "policy decision" is a *discretionary* determination to proceed upon a course of action adopted as advantageous or expedient. (Oxford Univ. Dict. (3d ed. 1955), "policy"; *East Bay Municipal Utility Dist.* v. *Department of Public Works,* 1 Cal.2d 476 [35 P.2d 1027], quoting from *People* v. *Board of Education,* 54 Cal. 375, 377.) The adoption of a "policy" may imply a fixed course or rule of action, the antithesis to *discretion,* to the extent it

ossifies the initial decision which thereafter governs like causes. By definition, *discretion* is "Liberty or power of deciding, or of acting according to one's own judgment; in Law, the power to decide, within limits allowed by positive rules of law . . . to regulate matters of procedure and administration." (Oxford Univ. Dict. (3d ed. 1955), "discretion.") Perforce, one finds that the attempted antomasia is itself a fractious horse to ride, in search of legislative intention.

The area of discretion involved in this cause was neither reached nor considered in *Johnson* v. *California, supra,* 69 Cal.2d 782. Within this area are included the wide range of situations where factual determinations are made, the determination resting upon the judgment and discretion of the employee. A long line of personnel cases, of which *Lipman* v. *Brisbane Elementary School Dist.,* 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465], and *Tietz* v. *Los Angeles Unified School Dist.,* 238 Cal.App.2d 905 [48 Cal.Rptr. 245], are examples, involve this to some degree. The verdict of the jury, the factual findings of an administrative body or of a city council or an administrative officer, embrace this type of vested discretion,[17] as in *County of San Mateo* v. *Maloney, supra,* 71 Cal. 205, 208.

In *Coates* v. *United States, supra,* 181 F.2d 816, it was held that what is a " 'discretionary function or duty' has a long history of precise meaning in a legal sense." The court held that the collection and evaluation of weather and flood information was included within the immunity for discretionary action afforded by the Federal Tort Claims Act, 28 U.S.C. section 2680(a). It has been noted that there are slight differences between that section and Government Code section 820.2 (*Sava* v. *Fuller,* 249 Cal. App.2d 281, 288 [57 Cal.Rptr. 312]), but the coverage is the same where the breadth of immunity declared by *White* v. *Towers, supra,* 37 Cal.2d 727, 733, is considered. Like the federal act, section 820.2 covers both the acts and omissions of any employee.

I have concluded that the evaluation of the data concerned, and of the future predictions of weather, and of river flow, by their very nature, call for subjective weighing of information and determination of future pro-

---

[17]A leading case: *Gaylord* v. *City of Pasadena,* 175 Cal. 433, 436 [166 P. 348], determination that electric installation is unsafe; cf. *Johnson* v. *California, supra,* 69 Cal.2d 782, 795, "When, in the opinion of the Youth Authority . . ."; *Routh* v. *Quinn, supra,* 20 Cal.2d 488, computation of a tax; *Housing Authority of Los Angeles County* v. *Dockweiler,* 14 Cal.2d 437 [94 P.2d 794], existence of facts upon which application of a law depends; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348 [203 P.2d 37], determination that a certain nonconforming use was essential or desirable, under a zoning ordinance; *Balferino* v. *Mason,* 83 Cal. 447 [23 P. 530], assessor finding the actual cash value of property; *Coverstone* v. *Davies,* 38 Cal.2d 315 [239 P.2d 876], determination of probable cause for arrest; *In re Martin,* 83 Cal.App.2d 164 [188 P.2d 287], health officer imposing quarantine.

jected possibilities. This therefore falls into the quasijudicial analogy. Perhaps *Ballerino* v. *Mason, supra,* 83 Cal. 447 [23 P. 530] is comparable. Consider also, *Porter* v. *Haight,* 45 Cal. 631, 638-639.

Since the statute has declared it, we are not called upon to determine whether the state ought to have immunity. An explicit legislative declaration of public policy, regardless of any judicial view of the social desirability thereof, must be given effect, and may not be regarded in the same way by this court as the doctrine of immunity fashioned by judicial decision. (*Schwartz* v. *Borough of Stockton,* 32 N.J. 141 [160 A.2d 1, 4].) Repeatedly, the admonitions of our Supreme Court are to the same effect in relation to statutory construction, following Code of Civil Procedure section 1859. The court's function is to construe and apply the law as enacted, and not to add thereto or detract therefrom. (*In re Miller,* 31 Cal.2d 191, 199 [187 P.2d 722].) The fundamental rule is to ascertain and give effect to the intention of the Legislature. (*Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640 [335 P.2d 672]; *Calaveras County* v. *Brockway,* 30 Cal. 325; *In re Nowak,* 184 Cal. 701 [195 P. 402].) Intentions at odds with intentions articulated in statutes cannot be ascribed to the Legislature. (*People* v. *Knowles,* 35 Cal.2d 175, 183 [217 P.2d 1], cert. den. *Knowles* v. *California,* 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117].) The language should never be construed to nullify the will of the Legislature. (*Rose* v. *California,* 19 Cal.2d 713, 723 [123 P.2d 505].) It is our duty to give effect to such principles. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) Incidental statements of conclusions by the Supreme Court, not necessary to the decision in which they appear, are not to be regarded as authority, but only as dicta. (*Simmons* v. *Superior Court,* 52 Cal.2d 373, 378 [341 P.2d 13]; *Stockton Theatres, Inc.* v. *Palermo,* 47 Cal.2d 469, 474 [304 P.2d 7]; *Trinity County* v. *McCammon,* 25 Cal. 117; cf. *Alberton* v. *Superior Court,* 265 Cal.App.2d 812, 816 [71 Cal.Rptr. 553].)

There are instances, also, where the language must be read carefully in the light of the facts before the court, and limited thereto. The postulates to rationalize a just decision in a hard case sometimes tangle the skeins of yarn while knitting a judicial garment to clothe the situation.

Discretionary immunity, as urged upon us in the present case, is predicated upon the fact-finding process involved in making flood forecasts, in which weather forecasts are a correlative part.

Since this type of official judgment and discretion was not reached nor considered in *Johnson* v. *California, supra,* 69 Cal.2d 782, the dicta thereof, if otherwise applicable, would not control our decision. Since the Legislature already has declared the statutory immunity of employees, and the conse-

quent immunity of the state where the employee's immunity exists, it is obvious that all of the conclusions whether or not such immunity should exist as judicial policy were purely dicta, not involved in any ultimate question presented to the court. After its pilgrimage through this wilderness, the decision of the court was made upon established grounds. But in placing the line between ministerial acts and omissions, on the one hand, and acts or omissions occurring in the course of the exercise of judgment and discretion on the other, the court was careful to note that there might be difficulty in applying its criteria in future cases. (*Johnson* v. *California, supra,* 69 Cal.2d 782, 793, 795.) In the present case we have been beset by such difficulties. On one point, there is a specific holding that "the governmental entity, to be entitled to immunity, must show that its employee actually reached a considered decision knowingly and deliberately encountering the risks that give rise to plaintiff's complaint." (*Johnson* v. *California, supra,* 69 Cal.2d 782, 794, fn. 8.) This, again, does not reach the area of discretionary fact-finding. It departs from the preexisting law which section 820.2 was designed to codify,[18] since non-action has been held to fall within the immunity; omissions are specifically designated in the section, and negligent omissions arise preeminently from failure to appreciate or consider a risk at all.[19]

It is intimated in some cases such as *Sava* v. *Fuller, supra,* 249 Cal. App.2d 281, 291-292, that casuistres of the pre-*Muskopf* cases should not be preserved, in relation to the immunity for discretion. But *Muskopf* declared such immunities, and did not remove them.

In *Muskopf* v. *Corning Hospital Dist.,* 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], the Supreme Court asserted its judicial policy of abrogating the immunity of the state and its agencies from tort liability. In the same decision, however, it reasserted the immunity of officers and employees for acts and omissions in the exercise of the discretion vested in them, acting within the scope of their authority, while holding them liable in performance of ministerial duties (p. 220). Illustrating the rule, the Supreme Court cited *Downer* v. *Lent, supra,* 6 Cal. 94, 95; *White* v. *Towers, supra,* 37 Cal.2d 727; *Hardy* v. *Vial,* 48 Cal.2d 577 [311 P.2d 494]; and *Gregoire* v. *Biddle,* 177 F.2d 579, 581, with approval. The court stated (p. 220) that in the companion case decided the same day, *Lipman* v. *Brisbane Elementary School Dist., supra,* 55 Cal.2d 224, the court would again examine the question (in the absence of statute) to what extent the public entity would be afforded the same immunity, as a matter of judicial policy. *Lipman* (at p. 229) again asserted the immunity rule as to the discretionary acts or

---

[18]*Johnson* v. *California, supra,* 69 Cal.2d 782, 789 fn. 4, 795 fn. 9.

[19]*Wilson* v. *Sharp,* 42 Cal.2d 675, 678-679 [268 P.2d 1062]; *Galli* v. *Brown,* 110 Cal.App.2d 764 [243 P.2d 920]; 2 Harper & James, Torts, § 29.10(3), pp. 1638, 1643.

omissions of officers and employees, and then (at p. 230), Chief Justice Gibson stated, "Although it may not be possible to set forth a definitive rule which would determine in every instance whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages." Further, "There is a vital public interest in securing free and independent judgment of school trustees in dealing with personnel problems, and trustees, being responsible for the fiscal well-being of their districts, would be especially sensitive to the financial consequences of suits for damages against the district." The district was held immune from tort liability for the alleged acts of the trustees within the scope of their authority, and not liable for acts outside the scope of their authority. The court again approved the rule of *White* v. *Towers, supra,* 37 Cal.2d 727, 733, that in the application of immunity the duties of public officers are those squarely within its scope, those essential to the accomplishment of the main purpose, and those which only incidentally and collaterally serve to promote the main purpose.

In *Johnson* v. *California, supra,* 69 Cal.2d 782, 787, footnote 3, it is recognized that the Legislature, by Government Code section 815.2, has provided coextensive immunity and "our function is of course limited to interpreting this act . . . We must still determine which actions are 'discretionary.' "

At this point, confusion enters the picture. Although the occasion for application of the policy considerations for extending immunity to the entity when it is enjoyed by the employee was cancelled out by the enactment of section 815.2, it seems to be asserted that the Legislature empowered the courts to determine whether the granted immunities should be recognized, as a matter of judicial policy of revision and redefinition. It is stated in *Johnson* (pp. 789-790, fn. 4) that the Legislature specifically approved the *Lipman* approach in defining "discretionary acts." "The Senate Committee on Judiciary Comment to section 820.2, part of the 1963 codification of sovereign immunity law, states: 'This section restates the pre-existing California law,' citing *Lipman,* inter alia. (Sen. Jour. (April 24, 1963) p. 1889.)" But the "inter alia" included *Hardy* v. *Vial* (1957) *supra,* 48 Cal.2d 577, and *White* v. *Towers* (1951) *supra,* 37 Cal.2d 727. The latter incorporated a list (p. 731) of discretionary immunity decisions. If *Lipman* was "expressly approved" by inclusion in the Senate report, so were the other cases.

Turning to *Lipman* to find the criteria for defining "discretionary acts,"

one is disappointed. As *Muskopf* indicated, it discusses judicial policy criteria for granting or withholding immunity to the entity, when it attends the conduct of the officer or employee. But (now covered by statute) the invisible policy emanation of *Lipman* immediately is turned to self-destruction of one of the policy considerations therein declared. (*Johnson* v. *California, supra,* 69 Cal.2d 782, 789.) The "importance to the State" is read out of such considerations.

The dicta then turns upon *Lipman's* companions which had co-equal legislative approbation, *White* v. *Towers,* 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636], and *Hardy* v. *Vial,* 48 Cal.2d 577 [311 P.2d 494], and states, contrary to these cases (*Johnson* v. *California, supra,* 69 Cal.2d 782-791): "The danger that public employees will be insufficiently zealous in their official duties does not serve as a basis for immunity in California." Indemnity and defense now provided for the employee, and the subjection of the entity to liability are assigned for the reason for this judicial view. But since the Legislature has declared such immunities, this is clearly dicta.[20]

The court recognizes that the Legislature did not intend that the immunity granted by Government Code sections 820.2 and 815.2, subdivision (b) be contracted by judicial redefinition. (*Johnson* v. *California, supra,* 69 Cal.2d 782, 789, fn. 4.)[21] Certainly, it would be most strange to assume that whether *discretion is vested* in an officer or employee is to be determined by whether or not judicial policy would approve the immunity which attends it.

In view of the established policies of judicial interpretation, one cannot

---

[20] Many other considerations perhaps attend the legislative policy. As noted in *White* v. *Towers, supra,* 37 Cal.2d 727, and *Hardy* v. *Vial, supra,* 48 Cal.2d 577, 583, there is a very real harassment caused by frequent unfounded "vindictive and retaliatory damage suits." For instance, in a small city, the entire police department may virtually be immobilized by loss of manpower, while suits make their way through discovery preparation and trial. It is not difficult to visualize what may be involved in an outbreak such as in Watts, or a violent demonstration anywhere. It is one thing to say the entity will pay the cost of such defense, but the Legislature may well consider the cost burden, and political reaction to suits brought as a result of discretionary action, even when unfounded.

[21] In addition to the Committee's Report as to section 820.2, quoted in footnote 22 below, and cited in *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131,139, fn. 6 [43 Cal.Rptr. 294], the Committee in relation to Government Code section 815.2 stated, in part: "The California courts have held on many occasions that a public employee is immune from liability for his discretionary acts within the scope of his employment even thought the discretion be abused. This rule is codified in Section 820.2. Under the above section, a public entity also is entitled to the protection of that immunity. Thus, this section nullifies the suggestion appearing in a dictum in *Lipman* v. *Brisbane Elementary School District,* 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465] (1961), that public entities may be liable for the acts of their employees even when the employees are immune."

believe that in *Johnson*, the court intends as sweeping a program of redefinition as can be inferred from the dicta.

My learned colleagues conclude otherwise, on the basis that the Supreme Court has "formulated a new criterion" limiting discretion to basic policy decisions, committed to coordinate branches of government.

If by such redefinition the court has eliminated the type of fact-finding discretion herein involved from the preexisting immunity, it has created new liabilities contrary to Government Code section 815, which declares any new liability must be declared by statute. The Legislative Committee report, which in *Johnson* v. *California, supra,* 69 Cal.2d 782, 789, was recognized to have expressed a caveat against any such procedure, would thereby have been flaunted.[22] Government Code section 820.2 was designed to be all-inclusive. No reason exists for a special section to cover forecasting, unless section 820.2 and section 815.2, subdivision (b), do not mean what they say.

Appellant could not have compelled the respondents to organize and conduct their public office and their public works in any particular manner, as a private duty to him. As between individual defendants, there is no *respondeat superior. (Michel* v. *Smith,* 188 Cal. 199 [205 P. 113]; Gov. Code, § 820.8.) There being no statute or regulation requiring it, he could not have compelled appellants to make weather nor flood forecasts, nor could he demand he be furnished respondents' information concerning predicted flood levels. Such forecasting, as a process, required fact-determination and judgment, the essence of discretion. The immunity for errors is not stripped away because of any alleged negligence in gathering data, as was decided in *United States* v. *Neustadt, supra,* 366 U.S. 696. The information given appellant had no causative effect in the rise of the river, and if the future prediction can be called negligent because it did not become fact, it was only a remote cause of appellant's damage. (*Rubinow* v. *County of San Bernardino, supra,* 169 Cal.App.2d 67.) Appellant was in all likelihood no worse off than if he had had no forecast at all.

If "judicial abstention" from controlling official discretion is the basis for

---

[22]The Senate Committee on Judiciary Comment to section 820.2 stated in part: "The discretionary immunity rule is restated here in statutory form to ensure that, *unless otherwise provided by statute* [italics added], public employees will continue to remain immune from liability for their discretionary acts within the scope of their employment." In the sections that follow section 820.2 (Gov. Code, §§ 820.4, 820.6, 820.8, 821, 821.2, 821.4, 821.6, and 821.8) several immunities of public employees are set forth even though they have been regarded as within the discretionary immunity. These specific immunities are stated in statutory form so that the liability of public entities may not be expanded by redefining " 'discretionary immunity' to exclude certain acts that had previously been considered as discretionary." (Senate Journal, April 24, 1963, p. 1889.)

official immunity, rather than the declarations of the Legislature, then the instant case impels such abstention.[23] The state's management and control of flood waters involve the highest elements of the police power, not only in policy making, but in operations in emergency flood situations. If a negligent forecast was made incidental to the major undertaking, it was breach of a public duty, not one inuring to any individual. Under the case of *White* v. *Towers, supra,* 37 Cal.2d 727, specifically approved by the Legislature, immunity extends to all areas of official action incidental to the main purpose. This would include the forecasting in question.

Only upon such principle of *White* v. *Towers, supra* (which was again approved in *Lipman*) can appellant state a cause of action at all, for want of showing of any statute, rule, or regulation, underlying forecasting in 1964 giving any authority or imposing any duties in relation thereto. Appellant's allegations embody only conclusions of law in this regard. The absence of any duty at all is not, as the majority holds, the basis of special demurrer, but of the general demurrer. If the individual defendants cannot be said to have specific discretion vested in them, they still partake of the state's immunity under the police power in the entire enterprise. This was held sufficient in the federal cases considered, *supra.*

Assuming that upon some undisclosed formal basis the departmental functions pleaded by appellant were authorized functions (such assumption being based upon the present Water Code section 236), there is no reason to say that the immunity declared in Government Code section 820.2 and section 815.2, subdivision (b), does not apply to the individual defendants and to the State of California as well. The Supreme Court's latest case in

---

[23]"Judicial abstention" as the basis of official immunity for the exercise of discretion, rooted in the separation of powers, was asserted in *Hancock* v. *Burns* (1958) 158 Cal.App.2d 785, 792 [323 P.2d 456]. This upheld legislative immunity of a committee of the Legislature. Conversely, in *Oppenheimer* v. *Ashburn* (1959) 173 Cal.App.2d 624 [343 P.2d 931], despite Penal Code section 1505 imposing liability upon judges refusing to grant a writ of habeas corpus on the merits, the court held that the separation of powers under the California Constitution made such a statute unconstitutional. The court stated (pp. 633-634): "The principle of immunity cannot be cut and quartered to the particular measure the Legislature may have in view. It survives as a whole or it ends in pieces." So here.

It was not asserted before *Johnson* that official immunity in all areas of government rested upon such principles generally. Prior to the present statutes, it is true such immunities rested on the declaration of the courts, which in California, were based upon *Kendall* v. *Stokes,* 44 U.S. (3 How.) 87 [11 L.Ed. 506]; *Bradley* v. *Fisher,* 80 U.S. 335, 20 L.Ed. 646], and *Wilkes* v. *Dinsman,* 48 U.S. (7 How.) 89 [12 L.Ed. 618].

In 2 Harper & James, Torts, section 29.10, subdivisions (2), (3), page 1638, the doctrine of abstention is shown to generally relate to the use of extraordinary writs to control official action; the policy of *Marbury* v. *Madison,* 5 U.S. (1 Cranch) 137 [2 L.Ed. 60]. As evidenced by *Chisholm* v. *Georgia,* 2 U.S. (2 Dall.) 419 [1 L.Ed. 440], this policy did not control liability, but liability provoked the Eleventh Amendment, setting the pattern of immunity of state governments generally.

this field, *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal. Rptr. 389, 449 P.2d 453], which follows conventional patterns, supports and does not negative the conclusions reached herein.

Having summarized my conclusions at the beginning of this concurring and dissenting opinion, I do not repeat them here.

I would affirm the judgment of the trial court.

The petitions of the appellant and the respondents for a hearing by the Supreme Court were denied April 1, 1970. Burke, J., was of the opinion that the petition should be granted.