[No. B041672. Second Dist., Div. Two. Feb. 1, 1990.]

JOSEPH TOKESHI et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Peter M. Gwosdof for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and Susan D. Melton, Deputy Attorneys General, Wasserman, Comden & Casselman and Robert C. Powers for Defendants and Respondents.

OPINION

COMPTON, Acting P. J.—Plaintiffs Joseph and Hideko Tokeshi filed an action against defendants State of California (State), County of Los Angeles (County), and certain County employees to recover damages for violations of the Food and Agricultural Code.[1] Their third amended complaint also sought a declaration that section 12673 of the Food and Agricultural Code is unconstitutional. On the day of trial, defendants moved for a judgment on the pleadings. After concluding that the defendants were entitled to governmental immunity, the trial court granted the motion and entered a judgment against plaintiffs. This appeal follows. We affirm.

[1] The County employees named as defendants are Paul Engler, agricultural commissioner and director of weights and measures; Cato Fiksdal, supervising agricultural inspector; Jeff Humphreys, agricultural inspector; and Robert Donley.

 Preliminarily, we note that a motion for judgment on the pleadings is comparable to a general demurrer in that it may be used to attack a complaint for failing to state a cause of action. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 953, pp. 385-386.) The motion may be made prior to or at trial. (*Ibid.*) "Since judgment on the pleadings is similar to a judgment following the sustaining of a demurrer, the standard of appellate review is the same. 'Like the demurrer, the motion for judgment on the pleadings is confined to the *face of the pleading under attack.* [Citations.] This means two things: [¶] *First,* if the pleading, though uncertain or otherwise defective in form, sufficiently states a cause of action or defense, the motion cannot be granted on the basis of a showing of extrinsic matters by inference from attached exhibits, by affidavits, or otherwise. [Citations.] [¶] *Second,* a sufficient complaint cannot be thus attacked by reference to matters set forth in the answer. [Citations.] [¶] But the unqualified statement of the foregoing rule may be misleading . . . [as] various outside matters may be looked to under the doctrine of judicial notice. . . .' [Citation.]" (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675-676 [138 Cal.Rptr. 338], italics in original.) Finally, since the motion performs the function of a general demurrer it admits as true the material facts pleaded. (*Id.* at p. 676.)

Applying the aforementioned principles, the record reveals that plaintiffs own a farm located in Claremont, California. In April 1986, County defendant Jeff Humphreys, acting under the authority of State, gratuitously instructed the couple to spray their growing raspberry crop with Plictran 50W, a pesticide formulated to control mite infestation. Plaintiffs followed the advice only to have County officials thereafter issue cease-and-desist directives prohibiting them from harvesting and selling their crop. The County made the order because the fruit carried Plictran residue in excess of the permissible tolerance.[2]

On May 28, 1986, plaintiffs lodged claims with the State and the County.[3] Defendants denied the claims, and plaintiffs subsequently commenced the

---

[2] Food and Agricultural Code section 12673, which plaintiffs claim is unconstitutional (see discussion, *infra*), provides: "The director or commissioner may prohibit the harvest of any produce that carries pesticide residue in excess of a permissible tolerance which is established by the director pursuant to this chapter."

In its respondent's brief, County states: "In 1986 there was no established tolerance for Plictran 50W on raspberries. Thus, any amount of Plictran residue amounted to a violation of the California Food and Agricultural Code."

[3] In part, the claim against the State asserted: "[¶] On April 18, 1986, at Claremont, California, your Claimants were injured by the issuance of a cease and desist order issued by the Agricultural Commissioner's Department for the use of Plictran upon a growing and existing crop after said pesticide had been previously approved by County employees who had directed your Claimants to use said pesticide. Further, that the chemical tests performed upon the Claimants' raspberries by the State laboratory was faultily and negligently performed. [¶]

present action. Essentially, plaintiffs alleged that defendants violated the law when Humphreys, without being licensed as an agricultural pest control adviser, orally instructed plaintiffs to use Plictran 50W.[4]

On February 24, 1989, State filed its motion for judgment on the pleadings. Two days later, the County defendants joined in the motion. The pleading assailed plaintiffs' first cause of action for damages on various grounds. The motion urged that the complaint failed to allege facts establishing that state employees had committed wrongful conduct; that a breach of statute had occurred; or that State owed a duty to plaintiffs under a special relationship theory. The motion also asserted that various statutory immunities barred the action and that plaintiffs had filed a fundamentally defective claim against the government. Moreover, defendants attacked plaintiffs' cause of action for declaratory relief on assorted procedural and substantive grounds.

The trial court granted the motion. In its judgment, the court stated: "Plaintiff's *first cause of action* is barred against all defendants under [the immunity provisions of] Government Code section 818.8 and/or 822.2 as the alleged conduct causing plaintiffs' injury is misrepresentation.[5] [¶] Ad-

---

That because of the alleged violation, your Claimants were unable to sell their entire Spring raspberry crop all to their damage in the sum of $425,000.00. . . . [¶] Your Claimants believe that the names of the employees of the County who have caused damages to the Claimants are Jeff Humphreys and Cato R. Fiksdal."

The claim presented to County, in relevant part, averred: "[¶] On April 18, 1986, at Claremont, California, your Claimants were injured by the issuance of a cease and desist order issued by the Agricultural Commissioner's Department for the use of Plictran upon a growing and existing crop after the pesticide had been previously approved by County employees who had directed your Claimants to use said pesticide. [¶] That because of the alleged violation, your Claimants were unable to sell their entire Spring raspberry crop all to their damage in the sum of $425,000.00. . . . [¶] Your Claimants believe that the names of the employees of the County who have caused damages to the Claimants are Jeff Humphreys and Cato R. Fiksdal."

[4]In 1986, an agricultural pest control adviser was "any person who offers a recommendation or who holds himself forth as an authority on any agricultural use, or a general adviser on any agricultural use who solicits services or sales." (Food & Agr. Code, § 11410.) At that time, such advisers were required to be licensed with the exception of federal, state and county officials and University of California personnel "engaged in official duties relating to agricultural use . . . provided that any recommendation by any such person as to any particular application on any particular piece of property shall *be in writing*." (Food & Agr. Code, § 12001, italics added.)

Plaintiffs also sought damages because defendants violated Food and Agricultural Code section 12054, which declares: "It shall be unlawful for any pest control adviser to make recommendations in a category for which he is not certified."

[5]Unless otherwise stated, all further statutory references are to the Government Code. Section 818.8 provides that "[a] public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

ditionally, plaintiff's theory that an omission by county employee Jeff Humphreys resulted in liability of defendants is defeated by Government Code section 815[, subdivision] (a).[6] [¶] With regard to plaintiff's second cause of action, a request for a declaratory judgment that Food and Agricultur[al] Code section 12673 is unconstitutional, the Court, in its discretion, declined to grant such relief finding no present dispute between parties that would make declaratory relief appropriate."

 On appeal, plaintiffs first contend that the trial court erred in holding that the oral statement made by Humphreys constituted a misrepresentation within the meaning of the immunity provisions of sections 818.8 and 822.2. We disagree.

"In 1963, the Legislature adopted several interrelated statutory provisions concerning governmental liabilities and immunities which have become known as the Tort Claims Act. . . . [¶] Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal constitution, were abolished. (§ 815.) Section 815.2, subdivision (a), imposes vicarious liability upon public entities for the tortious acts and omissions of their employees. In the absence of a statute a public entity cannot be held liable for an employee's act or omission where the employee himself would be immune. (§ 815.2, subd. (b).)" (*Michael J.* v. *Los Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 866-867 [247 Cal.Rptr. 504], fn. omitted.)

As noted, (see *ante*, fn. 5), the law immunizes both public entities (§ 818.8) and their employees (§ 822.2) from damages resulting from either negligent or intentional misrepresentations made by the employees. The immunity is absolute for the public entity (see Cal. Law Revision Com. com., Deering's Ann. Gov. Code, § 818.8 (1982 ed.) p. 174), but may be forfeited by the public employee if he "is guilty of actual fraud, corruption or actual malice." (§ 822.2.) However, since section 815, subdivision (b) declares that a public entity's statutory liability is subordinated to statutory immunities, a public employee may be liable for a misrepresentation made with actual fraud while the public entity remains wholly immune.[7]

---

Section 822.2 commands that "[a] public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice." Plaintiffs' complaint contains no allegation that defendant employees acted with the requisite mental states contained in section 822.2.

[6] Section 815, subdivision (a) declares that "[e]xcept as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

[7] Section 815, subdivision (b) provides: "The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided

(*Harshbarger* v. *City of Colton* (1988) 197 Cal.App.3d 1335, 1340-1341 [243 Cal.Rptr. 463]; *Universal By-Products, Inc.* v. *City of Modesto* (1974) 43 Cal.App.3d 145, 154 [117 Cal.Rptr. 525].)

█ Of course, before the immunities under sections 818.8 and 822.2 can be raised it must be determined that the statement in question was a misrepresentation within the meaning of the statutes. In *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352] our Supreme Court defined the term "misrepresentation" for purposes of governmental immunity. The court stated: " '[M]isrepresentation' potentially lends itself to extremely expansive and elusive interpretations. A driver of an automobile who makes a misleading turn signal, for example, literally has 'misrepresented' his intentions and subsequent course of conduct. Yet it would be senseless to hold the state liable if its employee failed to make any signal, arguably a 'nonrepresentation,' but reach the opposite result if he affirmatively 'misrepresented' his intentions. . . . [¶] We avoid this potential quagmire, however, by centering on the Legislature's goal in exempting the state from tort liability for 'misrepresentation.' The Legislature, in creating this exemption, must have had in mind those areas in which private defendants typically face liability for 'misrepresentation'; in other areas, immunity for 'misrepresentation' would be superfluous." (*Id.* at pp. 799-800.)

The court then concluded, "In short, 'misrepresentation,' as a tort distinct from the general milieu of negligent and intentional wrongs, applies to interferences with financial or commercial interest. The Legislature designed section 818.8 to exempt the governmental entity from this type of liability."[8] (69 Cal.2d at p. 800.) Hence, the court held that misrepresenta-

---

by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person." Hence, section 818.8 would prevail over an action commenced pursuant to section 815.2, subdivision (a) which generally imposes vicarious liability against a public entity for the torts of its employees committed within the scope of their employment.

[8] In limiting misrepresentation immunity to business and financial injuries, the *Johnson* court also relied on *United States* v. *Neustadt* (1961) 366 U.S. 696 [6 L.Ed.2d 614, 81 S.Ct. 1294]. There, the United States Supreme Court considered whether the government was liable to buyers of property who relied on an allegedly inaccurate inspection and appraisal report furnished by the Federal Housing Administration. The issue before the court was whether the report constituted a misrepresentation under a federal immunity statute similar to section 818.8. The high court concluded that the immunity was applicable, and during its discussion stated: "As Dean Prosser has observed, many familiar forms of negligent conduct may be said to involve an element of 'misrepresentation,' in the generic sense of that word, but '[s]o far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.' " (*Id.* at p. 711, fn. 26 [6 L.Ed. 2d at p. 624].)

The *Johnson* court further noted that the Senate committee on Judiciary Comment to [Government Code] section 818.8 confirmed that the reach of misrepresentation immunity

tion immunity would not bar a cause of action for damages resulting from a parole officer's failure to warn foster parents that a youth being placed in their home had homicidal tendencies.

Likewise, the Court of Appeal in *Michael J.* v. *Los Angeles County Dept. of Adoptions, supra*, 201 Cal.App.3d 859, refused to bestow immunity to a public entity in an action charging misrepresentation and concealment involving the adoption of a child with a medical condition. The *Michael J.* court stated: "The adoption process is not a commercial transaction, such as leasing and purchasing property or contracting for a pension. The immunity provided governmental entities and public employees by sections 818.8 and 822.2 does not shield the County from liability for misrepresentation and deceit in this social service area, designed to serve the interests of society by acting in the best interests of the child. Although appellants suffer a financial loss in the sense that they have incurred, and will continue to incur, substantial medical expenses, their loss did not result from a commercial transaction with the County nor from the County's interference with a commercial transaction." (*Id.* at p. 872, fn. deleted.)

On the other hand, outside the narrow context of the social service area, immunity will prevail where the governmental misrepresentation interfered with either a commercial or financial interest. In *Brown* v. *City of Los Angeles* (1968) 267 Cal.App.2d 849 [73 Cal.Rptr. 364], the Department of Building and Safety notified the owner of a therapeutic massage parlor and income tax service that her business was located in a residential zone and thereby violated the municipal code. After discontinuing her enterprises, the owner learned that the property she leased had received a variance for the operation of a massage parlor. She sued and the trial court granted the public entity misrepresentation immunity. We affirmed the judgment, holding that "an erroneous notification that a person's activities violate a zoning ordinance . . . amounts to a misrepresentation within the meaning of section 818.8." (*Id.* at pp. 850-851.)

Similarly, in *Hirsch* v. *Department of Motor Vehicles* (1974) 42 Cal.App.3d 252 [115 Cal.Rptr. 452], a purchaser of a stolen automobile brought an action alleging that the public agency negligently provided a certificate of ownership to the seller. The Court of Appeal found that "the

was confined to business and financial losses. That comment provides that " '[t]his section will provide . . . a public entity with protection against possible tort liability where it is claimed that an employee negligently misrepresented that the public entity would waive the terms of a construction contract requiring approval before changes were made.' (Sen. Jour. (April 24, 1963) p. 1889.)" (*Johnson* v. *State of California, supra*, 69 Cal.2d at p. 800.)

certificate of ownership here issued can clearly be construed as a 'misrepresentation' by the Department of Motor Vehicles of the true ownership of the vehicle, falling within the purview of section 818.8." (*Id.* at p. 258.)

In *Grenell* v. *City of Hermosa Beach* (1980) 103 Cal.App.3d 864 [163 Cal.Rptr. 315], the sellers of real property commenced an action based on a report furnished by the public entity purportedly misstating that two dwellings on the premises were legally authorized. Citing *Neustadt* (see, *ante,* fn. 8) the court held that misrepresentation immunity applied because the sellers' injuries arose from an interference with a financial interest. (*Id.* at p. 874.) Additionally, in *Harshbarger* v. *City of Colton, supra,* 197 Cal.App.3d 1335, homeowners sued for damages after they had to reconstruct their residence because city inspectors allegedly misrepresented and suppressed facts concerning the structure's compliance with the building code. The court, relying on *Grenell* and *Neustadt,* determined that misrepresentation immunity barred the action against the public entity because the injury resulted from an interference with the homeowners' financial concerns. (*Id.* at p. 1342.)

We think it clear that in the present case plaintiffs' alleged losses are commercial in scope, and therefore the defendants are shielded from liability under the immunity statutes. Plaintiffs contend, however, that their action is exempted from the immunity provisions because Humphreys gratuitously disseminated misinformation. In support of their position, plaintiffs cite *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744 [84 Cal.Rptr. 257]. There, a marina owner telephoned the State Department of Water Resources for a forecast concerning the water height of the Sacramento River. The agency reported that the river was expected to rise to a maximum of 24 feet. In reliance on the information, the owner set his docks to float to the maximum height of 26 feet. When the river swelled to 29 feet the owner sustained losses to his property. He then sued the state for, among other things, negligent dissemination of the river height forecast. In its majority opinion, the court held that the state was precluded from asserting misrepresentation immunity. The majority found that "although [the owner] suffered a commercial loss in the sense that his business installations were damaged, the loss did not result from a commercial transaction between him and the state, nor from the state's interference with his commercial transactions. The complaint alleges *a service gratuitously performed by the state in a negligent manner,* resulting in physical damage to property. As there is no allegation of a tortious interference by the state with [the owner's] commercial activities within the rationale of *Johnson* [v. *State of California*], we conclude that section 818.8 does not apply to this case." (*Id.* at p. 752, italics added, but see dissent at pp. 761-763, arguing that the immunity should be granted.)

It is obvious that the *Connelly* decision is inapposite to the facts of the present case. Plaintiffs have not averred that defendants negligently concluded that Plictran 50W could be legally administered to the raspberry crops. Moreover, even if plaintiffs had made such an allegation, the misrepresentation immunities would still prevail. In our view, by focusing on the negligent manner by which the public agency derived its forecast—instead of examining the statement itself—the *Connelly* majority created an artificial distinction which we decline to follow. As the United States Supreme Court recognized in *Neustadt*: "To say, as [the lower court] did, that a claim arises out of 'negligence,' rather than 'misrepresentation,' when the loss suffered by the injured party is caused by the breach of a 'specific duty' owed by the Government to him, i.e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,' . . ." (*United States* v. *Neustadt, supra*, 366 U.S. 696, 706 [6 L.Ed.2d at p. 621].)

For a similar reason, we also find unavailing plaintiffs' assertion that their damage action falls beyond the scope of the immunities statutes because the litigation is not based on a misrepresentation, but rather on violations of the Food and Agricultural Code. Regardless of the way plaintiffs couch their allegations, the gravamen of their action, pure and simply, is that they suffered injuries purportedly caused by their reliance on Humphreys's misinformation. (See also *Hirsch* v. *Department of Motor Vehicles, supra*, 42 Cal.App.3d 252, 258 wherein the court found the imposition of misrepresentation immunity appropriate even though the plaintiff alleged violations of the Vehicle Code.)

■ Plaintiffs' last contention is that the trial court abused its discretion when it refused to consider their declaratory relief action seeking a decree that Food and Agricultural Code section 12673, which empowers the director or commissioner to prohibit the harvesting of contaminated crops, is unconstitutional. Again, we disagree.

"The entertainment of an action for declaratory relief is within the discretionary power of the trial court. Its decision will not be disturbed unless a clear abuse of discretion is shown. [Citations.]" (*Gardiner* v. *Gaither* (1958) 162 Cal.App.2d 607, 622 [329 P.2d 22], fn. 1; see also Code Civ. Proc., § 1061 which provides that "[t]he court may refuse to exercise . . . [its declaratory relief power] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances.") As mentioned earlier, the trial court declined to hear the action because it found "no present dispute between parties that would make declaratory

relief appropriate." Based on the record below, the trial court was within its discretion to determine that the cause of action for declaratory relief was pleaded as an alternate means of recovering damages from defendants for improperly instructing them to use Plictran 50W. Since the immunity statutes, however, shield defendants from damage liability, there exists no controversy between the litigants.

Lastly, as an aside, we think important to note that Food and Agricultural Code section 12974 provides: "Failure of a person using a pesticide to possess a written recommendation shall create a rebuttable presumption that he has assumed responsibility for the recommendation."

The judgment is affirmed.

Gates, J., and Fukuto, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 26, 1990. Mosk, J., and Arabian, J., were of the opinion that the petition should be granted.