[No. B051503. Second Dist., Div. Five. July 23, 1991.]

LUNDEEN COATINGS CORPORATION, Plaintiff and Appellant, v. DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES, Defendant and Respondent.

818

**COUNSEL**

Ralph E. Wiggen for Plaintiff and Appellant.

James K. Hahn, City Attorney, Edward C. Farrell, Assistant City Attorney, and Stanton J. Snyder, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**GRIGNON, J.**—In this appeal, we are asked to reverse an order dismissing (demurrer sustained without leave to amend) plaintiff subcontractor's complaint against defendant department of water and power (DWP). Plaintiff contends that it is owed over $1 million for construction services rendered. Defendant maintains that plaintiff failed to sue on its unpaid contract claims within the two-year period prescribed by Government Code section 945.6, and that DWP is immune from the tort claims alleged. We affirm.

### FACTS

For purposes of this appeal, we assume that the facts as alleged in plaintiff's third amended complaint for damages are true. They are as follows: On December 10, 1981, defendant General Electric Environment Sources, Inc. (GEESI) entered into a written agreement with the Intermountain Power Agency[1] (Owner) to act as the prime contractor for the construction of wet scrubbers for units 1 and 2 of the Intermountain Generating

---

[1]The Intermountain Power Agency is a political subdivision comprised of 23 Utah municipalities.

Station, Intermountain Power Project in Delta, Utah (Prime Contract). Defendant DWP was the "agent and duly authorized representative of the [O]wner in the administration" of the Prime Contract. DWP was the project manager for the Prime Contract, was responsible for the overall design, construction, and operation of the project, and acted as the agent and representative of the Owner of the project. Defendant Bechtel Corporation acted as the construction manager for the project, pursuant to a written agreement between Bechtel, the Owner, and DWP.

On November 5, 1984, GEESI entered into a written agreement with defendant Con/Chem Inc. (CCI), whereby CCI agreed to provide labor and materials necessary to install tank linings and to perform work related to the reaction tanks, the thickener feed mix tank, the filter feed tank, the limestone slurry tanks, and the distribution trough of the wet scrubbers of units 1 and 2 (Subcontract). GEESI agreed to pay to CCI $333,844 for materials and $523,632 for installation. GEESI knew that CCI would subcontract these contracted-for services because the Subcontract with GEESI provided that the work was to be performed by a contractor licensed to do business in the state of Utah, and CCI did not hold such a license.

Plaintiff Lundeen Coatings Corporation is a painting contractor licensed to do business in California and Utah. Pursuant to the Prime Contract and the Subcontract, on April 8, 1985, plaintiff entered into a written agreement with CCI to supply all of the labor and equipment necessary to install CCI's lining materials into the tanks for the wet scrubbers of units 1 and 2. CCI agreed to pay plaintiff $598,000. Plaintiff was approved and accepted by GEESI as a subcontractor qualified to work on the project.

GEESI's fabrication and welding of the tanks was defective, and caused plaintiff to incur delays in its scheduled work and extra work in the form of repairs. GEESI concealed these defects from CCI and plaintiff. However, Bechtel and DWP knew of the defects. Plaintiff performed all of the terms and conditions of its contract with CCI as to unit 1 between April 8, 1985, and October 21, 1985. Plaintiff's work on unit 1 was accepted by all defendants on October 21, 1985.

Defendants DWP, Bechtel, GEESI, and others conspired to terminate CCI from the project after work was completed on unit 1, but before work was undertaken on unit 2. DWP's role in this alleged "fraudulent interference with economic advantage" and "conspiracy to fraudulently induce a breach of contract" is not entirely clear. Apparently, DWP conspired to cause CCI to default in the performance of its obligations under the Subcontract. DWP

improperly represented that CCI had not performed its obligations under the Subcontract resulting in GEESI's finding that CCI was in default. CCI was not permitted to perform the work on unit 2 and, as a consequence, plaintiff was not permitted to perform the unit 2 work and lost the benefit of its contract with CCI. GEESI performed the lining work on unit 2 itself.

The general conditions of the Prime Contract set forth a procedure by which claims for payment and requests for change orders were to be presented to DWP. Plaintiff, as directed by defendants, presented a claim for extra work and requests for change orders to DWP through GEESI. GEESI submitted plaintiff's claim to DWP at 111 North Hope Street in Los Angeles between February 15, 1985, and March 13, 1986. The claim, which consists of two volumes over two inches thick, sought $1,264,078 for extra work provided by plaintiff.[2] At no time did defendants intend to pay plaintiff for its claim. DWP "considered" the claim from approximately March 13, 1986, to approximately August 1988. DWP at no time notified plaintiff that its claim was defective, nor did DWP give to plaintiff or CCI its notice of denial or rejection. On July 1, 1987, CCI filed a chapter 11 petition in the United States Bankruptcy Court for the Central District of California.

DWP, as project manager, was required to withhold from final payments made to GEESI a sum sufficient to pay plaintiff's claim. GEESI received final payment on the project in August 1988. DWP did not withhold the amount due plaintiff. GEESI did not pay plaintiff. Moreover, in return for the release of a claim in excess of $800,000 against GEESI by the Owner, GEESI released the Owner from liability for plaintiff's claim for extra work.

PROCEDURAL BACKGROUND

Plaintiff filed suit against GEESI, Bechtel, and DWP on June 16, 1989. Plaintiff filed a first amended complaint on June 23, 1989. DWP filed a general demurrer to the first amended complaint on December 1, 1989, on the ground that plaintiff had not filed a timely government claim against DWP, as required by Government Code section 911.2. DWP also demurred on the basis that Government Code section 818.8 prohibits the award of punitive damages against a public entity. By minute order dated January 12, 1991, DWP's demurrer was sustained. Plaintiff was granted 10 days leave to amend. GEESI had also successfully demurred to the first amended complaint as to all causes of action except for plaintiff's cause of action to recover on the performance bond.

---

[2]Because of its volume, this document was not attached to the complaint as an exhibit.

Plaintiff filed a second amended complaint on January 26, 1990. DWP again demurred to the second amended complaint. DWP argued that plaintiff's complaint set forth contract theories against DWP, even though DWP was not the owner of the project, was not a party to any written construction agreements, and acted merely as the construction manager for the project. DWP maintained that as manager, it did not receive any benefit from plaintiff's work but that, even if it had, no quantum meruit action may be brought against the government, as a matter of law. In addition, DWP asserted that once again plaintiff had not alleged compliance with the government claims statute, Government Code section 911.2. Finally, DWP contended that except in cases of urgent necessity, all contracts with the City of Los Angeles for more than $500 must be in writing, pursuant to section 385 of the City Charter. The demurrer was taken off calendar upon the granting of GEESI's separate demurrer to the second amended complaint.[3]

Upon motion for reconsideration of the order sustaining GEESI's demurrer, the trial court granted leave to file a third amended complaint, which was filed on March 12, 1990. Plaintiff also filed a Government Code section 911.2 claim for tort (as opposed to contract) damages on March 9, 1990. DWP again demurred generally to the third amended complaint on the same grounds. Plaintiff had, by its third amended complaint, alleged on information and belief that a claim had been filed with the DWP. DWP argued, however, that any such claim would be deemed to have been denied within 45 days of presentation, i.e., within 45 days of March 13, 1986, and any lawsuit challenging the denial of such claim must have been filed within 2 years of the accrual of the cause of action, pursuant to Government Code section 945.6, subdivision (a)(2). Thus, DWP contended plaintiff's original complaint was filed more than one year too late, and the contractual claims set forth therein (second and fourth causes of action) were time-barred. DWP also maintained that claims based on an oral agreement (the second and fourth causes of action) were prohibited by the City of Los Angeles Charter and the statute of frauds[4]; the cause of action for money had and received (eleventh cause of action) could not be maintained against a government entity as a matter of law; and finally, plaintiff's hybrid claims for "fraudulent intentional interference with economic advantage" and "conspiracy to fraudulently induce a breach of contract" (seventh and ninth causes of action) were barred by Government Code section 818.8, which provides immunity for negligent or intentional misrepresentations of government employees.

---

[3]GEESI's demurrer is not part of the record on appeal.

[4]DWP also argued that the alleged oral agreement was a contract which could not be performed in less than one year.

Following a hearing on April 26, 1990, the demurrer was sustained without leave to amend as to all causes of action against DWP.[5] Upon the May 10, 1990, dismissal of DWP from the action, plaintiff appealed on July 3, 1990.

## DISCUSSION

A party against whom a complaint has been filed may object to the complaint on the ground that it fails to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) ■ The rules which guide our review of the sustaining of a general demurrer were summarized in *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]:

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citation.] The burden of proving such reasonable possibility is squarely on the plaintiff."

### I

### *The Contract Claims*

A. *Government Claim and Statute of Limitations*

In the second cause of action, plaintiff alleges that DWP breached an implied in fact agreement with it. A contract which is implied in fact is one whose existence and terms are manifested by conduct. (Civ. Code, § 1620.) Plaintiff alleges that by requesting and accepting plaintiff's extra work on the project, DWP impliedly agreed to pay for such extra work. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 11, p. 46.)

In the fourth cause of action, plaintiff alleges that DWP breached an implied in law agreement. ■ An implied in law agreement is not based

---

[5]Those causes of action are: the second (breach of implied in fact contract), fourth (breach of contract implied in law), seventh (fraudulent intentional interference with economic advantage), ninth (conspiracy to induce breach of contract and to commit fraud), and eleventh (money had and received).

on the apparent intention of the parties, but is an obligation created by the law for reasons of justice. (1 Witkin, Summary of Law (9th ed. 1987) Contracts, § 12, p. 47.) The right to recovery on an implied in law contract is based on unjust enrichment. Plaintiff alleges that DWP benefitted from plaintiff's extra work, because if plaintiff had not performed the extra work, DWP would have had to perform it at its own expense.

All claims against a governmental entity must comply with Government Code section 900 et seq. A claim relating to any cause of action other than one for "death or for injury to person or to personal property or growing crops" must be filed with the appropriate governmental entity within one year after the accrual of the cause of action. (Gov. Code, § 911.2.) If the governmental entity fails or refuses to act on a claim within the prescribed period, the claim shall be deemed to have been rejected 45 days after the claim was presented. (Gov. Code, § 912.4.) If the governmental entity does not give notice of rejection, a suit against the governmental entity on a cause of action for which the claim was filed must be commenced within two years from the accrual of the cause of action, regardless of any otherwise applicable statute of limitations. (Gov. Code, § 945.6.) The cause of action accrues on the same date upon which it accrues for statute of limitations purposes. (Gov. Code, § 901.)

■ The third amended complaint alleges that a claim for the amounts due plaintiff under its contract with CCI was presented by GEESI to DWP on or before March 13, 1986, and that it substantially complied with the applicable Government Code provisions. Assuming this to be true, as we must, plaintiff's suit for contract causes of action is nevertheless untimely under Government Code section 945.6, which requires that such suit be filed within 2 years of the accrual of the claim. The contract claim accrued in this case no later than March 13, 1986, the date the claim was filed. Therefore, the lawsuit, filed on June 16, 1989, was more than a year late.

Plaintiff contends that its action was timely filed because the action did not accrue until August 1988, when DWP settled the amounts due under the contract between the Owner and GEESI. Plaintiff contends that, at that time, DWP breached its promise to withhold from amounts paid to GEESI that portion of the funds due plaintiff, and that it was not until that time that plaintiff's cause of action accrued. This contention is without merit. Plaintiff alleges that its contract claim was submitted no later than March 13, 1986. Clearly, its contract causes of action accrued no later than the date on which plaintiff filed a claim for such damages.

Plaintiff's reliance on *Cooper* v. *Jevne* (1976) 56 Cal.App.3d 860 [128 Cal.Rptr. 724], is misplaced. *Cooper* involved fraud by county building

inspectors with respect to numerous and flagrant building code violations. Following the successful demurrer by the county to the complaint in *Cooper* on the ground that it had been filed more than six months following rejection of the claim at issue, the court of appeal reversed, holding that the cause of action for fraud did not accrue until the discovery of the fraud, which occurred *after* the plaintiffs' claim against the county had been formally rejected. Thus, the action was not barred by Government Code section 945.6. Here, plaintiff was well aware of the amount and nature of its contract claims against DWP at the time the claim for services and materials was presented to DWP in March 1986.

## B. Estoppel

Plaintiff further contends that DWP is estopped to rely on the statute of limitations set forth in Government Code section 945.6. The complaint alleges: "Defendants GEESI, Bechtel, and DWP from on or about February 13, 1986, to on or about a date in 1988 known to defendants but unknown to plaintiff, and subsequent to February 28, 1988, pursuant to said claims procedures in said contract documents considered and negotiated in bad faith among themselves the respective responsibility of each for payment for said claim. During the period said claim thus was being negotiated and considered by and among defendants GEESI, Bechtel, and DWP, said *defendants, and each of them, represented to plaintiff that payment would be made for said extra and additional work* pursuant to said claim and at no time did any defendant give notice to CCI or to plaintiff that said claim was rejected or denied, in whole or in part, and under said contract documents a sum sufficient to pay said claims was to be retained by defendant DWP as Project Manager until the claim was fully satisfied or satisfactorily secured. *At all times plaintiff was led to believe by defendants' express and implied representations* as alleged above that change orders would be made, that payment would be made by defendants for plaintiff's additional and extra work and that said claim would be paid."[6] Thus, all plaintiff has alleged is

---

[6]However, earlier allegations of the complaint indicate that the representations that plaintiff would be paid were made by GEESI, and not DWP. "Defendants GEESI, Bechtel, and DWP from on or about February 13, 1986, to on or about a date in 1988 known to defendants and unknown to plaintiff, but subsequent to February 28, 1988, pursuant to said claims procedures in said contract documents considered and negotiated in bad faith among themselves the respective responsibility of each for payment for said claim. *Defendant GEESI from time to time commencing on or about June 24, 1985, and continuing to on or about a date in 1988 by and through its duly authorized agents and employees T. Nielson, M. Young, S. Ojard, and T.L. Achenbach,* among others, in Lebanon, Pennsylvania and Delta, Utah, *fraudulently represented* to plaintiff's agents Ron Banda, Robert Kennedy, Gus Schmidt, and Clark Dickinson, among others, that payment would be made for said extra and additional work by defendant GEESI

that DWP made representations that plaintiff's claim would be paid. This is not sufficient to establish an estoppel to plead the statute of limitations against DWP. First, not all elements of estoppel have been pled. ▮ "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

In *Driscoll*, widows of firefighters and police officers made inquiries regarding their eligibility for pensions and received inaccurate information. The court in that case was influenced to find an estoppel against the city because the right at issue was fundamental in nature. See also, *City of Los Angeles* v. *Industrial Acc. Commission (Dillin)* (1965) 63 Cal.2d 255 [46 Cal.Rptr. 105, 404 P.2d 809], where it was observed that "the greater the right of the claimant, the heavier the obligation upon the agency not to mislead him." (*Id.* at p. 258 [Pension benefits in addition to those being received are not fundamental].)

▮ Here, plaintiff alleges DWP's mere promise to pay for extra work under plaintiff's contract with CCI. Plaintiff provides no indication as to why it was reasonable to continue to believe that promise for more than two years following the expiration of the forty-five-day period when plaintiff's claim was deemed rejected by operation of law. Significantly, plaintiff does not allege that it was encouraged to forestall filing suit on this claim. Mere allegations that plaintiff believed that "the check was in the mail" do not establish either ignorance of the true state of facts, or reasonable reliance by plaintiff to his detriment. Plaintiff may not reasonably rely on alleged representations by unnamed persons that a claim will be paid by a governmental entity after the claim has in fact been rejected by that same entity by operation of law. (*Cal. Cigarette Concessions* v. *City of L. A.* (1960) 53 Cal.2d 865, 871 [3 Cal.Rptr. 675, 350 P.2d 715] [City not estopped by letters of city clerk stating that clerk would advise that claim be paid where clear that board of supervisors must approve payment of claim].) Plaintiff is also not entitled to rely upon representations that DWP would perform an oral contract which is unenforceable under the statute of frauds contained in the

and at no time did defendant GEESI or any other defendant give notice to CCI or to plaintiff that said claim was rejected or denied, in whole or in part, and under said contract documents a sum sufficient to pay said claim was to be retained by defendant DWP as Project Manager until the claim was fully satisfied or satisfactorily secured."

Charter for the City of Los Angeles. (See discussion, *infra*; *Osborne v. Huntington Beach School District* (1970) 5 Cal.App.3d 510 [85 Cal.Rptr. 793].)

Further, the general rule is that a city may not be estopped by the conduct of its officers or employees. (*Cal. Cigarette Concessions, supra,* 53 Cal.2d at p. 869.) ■ "There are occasions for departure from the general rule that a city may not be estopped by the conduct of its officers or employees. [Citation.] But such departure is justified only when the facts clearly establish that a grave injustice would be done if an equitable estoppel were not applied." (*Ibid.*) The factors which contribute to a finding of an estoppel are not present here: whether the public agency acted in an unconscionable manner; whether the public agency took unfair advantage of plaintiff; whether the public agency was advising and directing or merely informing or responding to inquiries; whether a confidential relationship exists with the public agency and so forth. (*Driscoll, supra,* 67 Cal.2d at pp. 306-310.) ■ The facts as pleaded simply do not establish that a grave injustice would be done if DWP were not estopped.[7]

■■■ No basis for an estoppel against DWP has been sufficiently pled, and plaintiff's contract claims are, thus, time-barred.[8]

---

[7]On the other hand, there is authority for the proposition that "where the defendant makes representations to the effect that he will *perform his contractual obligation,* and the plaintiff, in reliance thereon, forbears to sue in time" an estoppel may arise. (Italics in original; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 524 and cases cited therein.) See *Langdon v. Langdon* (1941) 47 Cal.App.2d 28 [117 P.2d 371], where defendant "repeatedly requested" that plaintiff delay collection of bonus payments until defendant was established in a new business, defendant was estopped to invoke the statute of limitations as a defense, and *Lagamarsino v. San Jose Title Ins. Co.* (1960) 178 Cal.App.2d 455, 461 [3 Cal.Rptr. 80], where defendant insurer held out "the hope of an amicable adjustment" which induced plaintiff's delay, defendant was estopped. These cases are distinguishable on the ground that the party claiming the estoppel could reasonably rely on the promises to pay or settle because such promises were the only information available to plaintiff. Compare the case against a public entity, where an elaborate claims procedure has been established by statute or charter. There, representations by an employee of the public entity that payment will be made cannot constitute an estoppel as a matter of law, where, for example, the claim has either been formally rejected or, as in the present case, where the claim is deemed rejected by operation of law. That rejection, actual or implied, puts the claimant on notice that, despite promises that payment will be made, his claim has, in fact, been rejected. He may then not reasonably rely on the promises to pay, absent an express waiver of the statute.

[8]Plaintiff argues that it need not comply with the Government Code claims provisions because DWP failed to file a statement in Millard County, Utah, as required by Government Code section 53051 et seq. However, Government Code section 53050 exempts from this requirement the "state, or a county, city and county, or city." The DWP constitutes a department of the City of Los Angeles, and is thus exempt. (L. A. City Charter, art. XXII.)

## C. Oral Agreement

 Even if we were to determine that the allegations of estoppel are sufficiently pled to defeat the statute of limitations defense, the issue as to whether oral contracts can be enforced against DWP arises. A public entity is not liable on a contract unless the entity is authorized by statute to incur the obligation. (1 Witkin, Summary of Cal. Law, *op. cit. supra,* Contracts, § 77, p. 111, § 620, p. 558.) DWP correctly points out that the Charter for the City of Los Angeles requires, at section 385, that "[e]very contract involving an expenditure of more than five hundred dollars ($500) shall, except in cases of urgent necessity, as provided in Section 386 of this Charter, be made in writing, the draft whereof shall be approved by the board, officer or employee authorized to make the same . . . ." (L. A. City Charter, § 385.) Plaintiff maintains that the exception for DWP contracts for purchase of materials, supplies, and equipment involving values not in excess of $100,000 applies. That exception, however, plainly applies to requirements for city council approval and/or city attorney approval as to form, and not the basic requirement that the contract be in writing. (L. A. City Charter, § 385.) ██ ██ Thus, even if estoppel is adequately pled, the contract causes of action could not be maintained against DWP because they are not in writing. (*Osborne, supra,* 5 Cal.App.3d at p. 514.)[9]

## II

### The Tort Claims

Plaintiff alleges in the seventh cause of action that DWP intentionally interfered with its economic advantage by making the performance of its contract with CCI more burdensome to perform; by creating conditions to prevent plaintiff from working on unit 2 including causing CCI to default on the Subcontract; by asking plaintiff to perform extra work knowing that it had no intention to pay for the extra work; and by causing CCI to breach its contract with plaintiff.

Plaintiff alleges in the ninth cause of action that DWP conspired to induce CCI to breach its contract with plaintiff by wrongfully declaring CCI to be in default on the Subcontract. CCI's default on the Subcontract resulted in CCI being removed from the project prior to the performance of its services on

---

[9]As a general rule, a public entity cannot be sued on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations. (*Miller* v. *McKinnon* (1942) 20 Cal.2d 83, 88 [124 P.2d 34, 140 A.L.R. 570].)

unit 2. Thus, CCI could not honor its contract with plaintiff as to the work on unit 2.

We conclude that to the extent the tort causes of action are simply restatements of the contract claims, they are similarly barred by the statute of limitations. We conclude further that to the extent the tort causes of action are based on misrepresentations, DWP is entitled to governmental immunity.

## A. Misrepresentation

Tort claims may not be maintained against a public entity unless they are based on a statute or are required by the federal or state constitutions. (*Cochran* v. *Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409 [205 Cal.Rptr. 1].) Except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or other person, and any such liability established is subject to the immunity provisions of the Government Code. (Gov. Code, § 815.) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his or her employment if the act or omission would have given rise to a cause of action against the employee, unless the employee is immune from liability. (Gov. Code, § 815.2.) Government Code section 818.8 provides public entities immunity from liability for intentional or negligent misrepresentations of government employees.

On the basis of this statute, the trial court struck from the third amended complaint all references to fraud by DWP. Thereafter, the trial court found that the tort causes of action were still essentially allegations of misrepresentation and, accordingly, sustained the demurrer as to the tort causes of action.

" '[M]isrepresentation' as a tort distinct from the general milieu of negligent and intentional wrongs, applies to interferences with financial or economic interest. The Legislature designed section 818.8 to exempt the governmental entity from this type of liability." (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 800 [73 Cal.Rptr. 240, 447 P.2d 352].) Immunity will prevail where the governmental misrepresentation interfered with either a commercial or a financial interest. (*Tokeshi* v. *State of California* (1990) 217 Cal.App.3d 999, 1006 [266 Cal.Rptr. 255].) This is true even if the misinformation relied upon is gratuitously disseminated or the allegations of the complaint are couched in terms of code violations by the government entity and not misrepresentations per se. (*Id.* at pp. 1006-1007.)

Thus, a misrepresentation resulting in governmental immunity has been found where: the department of building and safety erroneously notified an individual that her activities violated a zoning ordinance (*Brown* v. *City of Los Angeles* (1968) 267 Cal.App.2d 849 [73 Cal.Rptr. 364].); the DMV negligently provided a certificate of ownership for a stolen automobile (*Hirsch* v. *Department of Motor Vehicles* (1974) 42 Cal.App.3d 252 [115 Cal.Rptr. 452]); a city misstated that dwellings on real property were legally authorized (*Grenell* v. *City of Hermosa Beach* (1980) 103 Cal.App.3d 864 [163 Cal.Rptr. 315]); and city inspectors misrepresented and suppressed facts concerning a structure's compliance with the building code (*Harshbarger* v. *City of Colton* (1988) 197 Cal.App.3d 1335 [243 Cal.Rptr. 463]).

 Plaintiff contends that this authority does not bar its claims, which are not based on misrepresentation. Close examination of those claims reveals that plaintiff's tort causes of action concern three types of conduct: (1) conduct which involved extra work for which plaintiff was not compensated; (2) conduct which made plaintiff's performance of its contract with CCI more burdensome and for which it should be compensated; and (3) conduct aimed at causing CCI to breach its contract with GEESI, removing CCI from the unit 2 stage of the project, and thereby interfering with plaintiff's contract with CCI. The first two types of conduct sound in contract, not tort. The third category of conduct appears to be based on DWP's misrepresentation with respect to the quality and timeliness of CCI's performance on the unit 1 stage of the project. Clearly the hybrid nature of the pleaded claims, which used the terms "fraud" or "fraudulently" repeatedly until the trial court struck those terms from the pleading, reveals that the very essence of these claims was *misrepresentation*. Plaintiff cannot now represent that those tort claims were based on conduct other than misrepresentation simply because the trial court has excised that language from the complaint.[10]

## B. Third Party Beneficiary

 Moreover, even if the causes of action are not contingent upon DWP's misrepresentation, but on *other* conduct, then the causes of action attempt to state a third party beneficiary theory with respect to the subcontract between CCI and GEESI which was allegedly wrongfully terminated. The gravamen of both of plaintiff's tort causes of action is that plaintiff was injured when CCI's subcontract with GEESI was terminated. However, the

---

[10]The doctrine of governmental immunity for misrepresentation does not apply to a contract action. (*Souza & McCue Constr. Co.* v. *Superior Court* (1962) 57 Cal.2d 508 [20 Cal.Rptr. 634, 370 P.2d 338].) However, as previously noted the contract actions are time-barred.

intention of CCI and GEESI in entering into their contract was not to benefit plaintiff, and so plaintiff was at most an incidental beneficiary of that contract, and may not recover for its breach. Subcontractors cannot recover directly from public entity owners of a construction project on a theory of third-party beneficiary of the prime contract, unless they are specifically intended to benefit from the issuance of the prime contract. (Acret, Cal. Construction Contracts and Disputes 2d (Cont. Ed. Bar 1990) § 4.24.; *Southern Cal. Acoustics Co. v. C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 727-728 [79 Cal.Rptr. 319, 456 P.2d 975]; *Swinerton & Walberg Co. v. City of Inglewood-L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 102 [114 Cal.Rptr. 834].) ▮▮ ▮▮▮ We conclude, therefore, that no cause of action may be maintained against DWP for interference with contract or prospective economic advantage because those claims were either time-barred, based on misrepresentations by DWP for which DWP may not be held liable under Government Code section 818.8, or improper claims for third party beneficiary damages.[11]

III

*The Common Count*

▮▮ The second amended complaint contained a cause of action for quantum meruit. DWP successfully demurred to this cause of action on the ground that an action for quantum meruit may not be maintained against the government as a matter of law. Plaintiff essentially repleaded the cause of action in the third amended complaint as one for money had and received. No allegations are made that DWP ever received money from plaintiff or on plaintiff's behalf. In fact, the complaint makes it quite clear that DWP was acting only as the project manager for the owner. It received no benefits

---

[11]We note that plaintiff's tort claims may also be subject to the immunity provided at sections 820.2 and 815.2 of the Government Code, as arising from the exercise of discretion of a public employee. Decisions which are more than ministerial and which concern basic policy decisions are " 'beyond the range of judicial inquiry.' " (*Johnson, supra,* 69 Cal.2d at p. 793.) This immunity is available in cases charging governmental interference with contract and will support the sustaining of a demurrer where the immunity appears on the face of the complaint. (*H & M Associates v. City of El Centro* (1980) 109 Cal.App.3d 399 [167 Cal.Rptr. 392].) See also *Osborne, supra,* 5 Cal.App.3d at pp. 514-515, where "advice by one governmental agency to another governmental agency not to perform an unenforceable oral contract to which the latter agency and a third person are parties . . . is the product of a basic policy decision." The conduct at issue here, i.e., advice by DWP to the Owner of the project that CCI's performance was not to contract specifications, and that CCI should not perform on unit 2 of the project, is just such a "basic policy decision." (See, e.g., *Swinerton & Walberg Co., supra,* 40 Cal.App.3d at pp. 101-102, fn. 3 [elaborate evaluation of performance potentials of bidding contractors is a discretionary act immune from liability under Gov. Code, § 820.2].)

provided by plaintiff; it received no money from plaintiff. *National Automobile & Cas. Ins. Co.* v. *Pitchess* (1973) 35 Cal.App.3d 62 [110 Cal.Rptr. 649] is inapposite, since it involves a claim of breach of fiduciary duty arising out of the execution of a writ of attachment and erroneous disbursement of over $10,000. The allegation that "defendants" became "indebted to plaintiff's assignor" is contradicted by the more specific allegations that DWP was acting only as a project manager under contract to the owner and had no ownership interest in the project at issue.

## CONCLUSION

We conclude that plaintiff's contract claims are barred by the statute of limitations provisions of Government Code section 945.6, that DWP is not estopped to assert the statute of limitations, that the claims are unenforceable oral agreements, and that DWP cannot be liable under any implied in law contract or quantum meruit theories. We conclude further, that DWP is immune from plaintiff's tort claims which are based, in essence, on alleged misrepresentations of DWP employees, and that plaintiff has no rights against DWP on a third party beneficiary of a contract theory. Finally, DWP cannot be liable for money had and received since it never received any money of plaintiff's, was only the agent for the owner of the project, and cannot be liable on a quantum meruit theory. Therefore, the trial court did not err in sustaining DWP's demurrer to the third amended complaint. Nor did the trial court err in denying plaintiff leave to amend. Plaintiff has already been permitted to file four complaints and did not indicate either at the trial or appellate court level that it can allege additional facts stating a cause of action.

## DISPOSITION

The judgment dismissing the action as to DWP is affirmed. Plaintiff shall bear costs on appeal.

Ashby, Acting P. J., and Boren, J., concurred.

A petition for a rehearing was denied August 21, 1991, and appellant's petition for review by the Supreme Court was denied October 24, 1991.